STATE OF CONNECTICUT *v.* KEITH JENKINS
(8780)

O'CONNELL, LANDAU and CRETELLA, Js.

Argued November 8, 1990—decision released April 2, 1991

---

*Brian M. O'Connell,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Christopher Morano,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of interference with a search in violation of General Statutes § 54-33d, risk of injury to a child in violation of General Statutes § 53-21, and reckless endangerment in the first degree in violation of § 53a-63 (a).[1] The defendant argues that the court improperly admitted drug paraphernalia and a .38 caliber gun into evidence. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. On July 26, 1988, twelve police officers converged on an apartment on Hampton Street in Hartford to execute a search warrant for narcotics, drug paraphernalia and weapons. When the police arrived, the apartment was occupied by a female tenant, her two year old child, a twelve year old child, and by, another woman, the defendant, and six other males. The officers' initial attempts to gain entry without force failed when the defendant threatened to shoot the officers if they set foot inside the unit. Because of the defend-

---

[1] The trial court granted the defendant's motion for judgment of acquittal as to the criminal use of a firearm in violation of General Statutes § 53a-216.

ant's threat, a two hour standoff ensued during which the police called in an emergency response team, notified a hostage negotiator, and evacuated a family from a nearby apartment. The episode caused a crowd, estimated at between 300 and 400 people, to gather outside the building. The police called for backup units to bring sledgehammers to break down the door.

A refrigerator blocked the first door that the police tried to open. Following their successful forced entry at a second door, Sergeant Frank Campbell and Detective Peter Getz encountered the defendant brandishing a gun and holding the two year old. The officers also observed several other people in the unit. The defendant's threats to shoot the officers compelled them to back out of the apartment. From their position in the stairway, the police shouted for the defendant to release the women and children. The door then opened and the two women and the twelve year old child emerged. The two year old appeared in the doorway, but the defendant quickly pulled the child back and slammed the door.

Meanwhile, Officer Paul Kutcher, who was positioned outside the building, observed several people in the apartment throwing things into the sink. Kutcher also saw the defendant hold the now crying two year old out the window, shielding himself with the child while shouting threats to the police and attempting to incite the crowd. The police in the stairway heard male voices yelling from inside the apartment that they wanted to surrender. The police told them to crawl out on their stomachs one at a time. Several males exited the apartment in this fashion, leaving only the defendant, the child and another male in the unit.

The police were subsequently approached by the defendant's attorney, who had apparently been contacted by the defendant during the standoff. The attorney

talked with the defendant from outside the apartment door. As a result of this conversation, the defendant released the child and surrendered to the police. The subsequent search of the apartment yielded the following evidence: a handgun and bullets, a gram scale with cocaine residue, vial containers and caps, .38 caliber bullets and a police radio scanner. All of these items were introduced at trial as indicative of a drug outlet operation.

Although he initially framed his claim in state and federal constitutional terms, at oral argument in this court the defendant conceded that he was entitled to review on only the evidentiary issues of relevancy and prejudice. This concession was appropriate because rulings on relevancy and motive are not issues of constitutional dimension but rather are evidentiary matters within the trial court's discretion. *State* v. *Kim,* 17 Conn. App. 156, 158, 550 A.2d 896 (1988). This appeal has been argued by the parties as a question of the admissibility of uncharged misconduct evidence. We will analyze the issue on the same basis on which it was argued by the parties. See *Crozier* v. *Zaboori,* 14 Conn. App. 457, 463, 541 A.2d 531 (1988).

Several police officers testified that all of the items in question were found in the raided apartment. The defendant objected to their admission into evidence on grounds of materiality and bias, emphasizing that no nexus had been established between the defendant and the apartment where the evidence was discovered. The only connection between the defendant and the exhibits is that he was present in the apartment at the time of the raid. The defendant argues that because no nexus exists between him and the drug paraphernalia, the court improperly allowed the state to introduce evidence of drug possession by the other people in the apartment against him. His reliance on this argument

is misplaced because "[t]he state is not obliged to present evidence of a [crime] in a vacuum; a description of the area where it occurred, the persons present and the activity in progress at the time of a [crime] are not irrelevant to the matter in issue." *State* v. *Moye,* 177 Conn. 487, 502, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979).

The trial court noted that the apartment was not proven to be the defendant's residence but admitted the questioned evidence for the purpose of establishing the defendant's motive. Immediately following the testimony of each officer, through whom the exhibits were introduced, the court gave the jury a very strict instruction limiting its consideration of the exhibits to determining the defendant's motive and expressly prohibiting the evidence's use for any other purpose.[2] In

---

[2] The instruction following the first officer's testimony was as follows:

"The Court: Ladies and gentlemen, these remarks are referring to three items that came into evidence moments ago—the Smith & Wesson handgun, the rounds or bullets, and the scanner. None of these things in and of themselves are against the law. They're legal to possess.

"I'm going to instruct you in the following way. This evidence, these items that I just referred to, may not be used by you, in fact, you are expressly prohibited in using this evidence as evidence of the bad character of the defendant or as evidence of his tendency to commit criminal acts. If you find the testimony concerning one or more of these items—and I'm referring to the three now, the Smith & Wesson handgun, the bullets, and the scanner—credible, if you find that the defendant had knowledge of the presence in apartment 204 of one or more of these items, you may consider those items of which Mr. Jenkins had knowledge for the sole and limited purpose of assisting you in determining the motive of Mr. Jenkins and for no other purpose. You are not permitted to consider this evidence for any other purpose and as to that purpose you must weigh such evidence as you do all other evidence in this case."

A similar instruction, incorporating the above material, was given after the testimony of each of the other officers through whom the exhibits were introduced into evidence.

its final instructions to the jury, the court again strongly and explicitly charged that the evidence could be used solely to determine the defendant's motive.[3]

Although evidence of other misconduct is not ordinarily admissible to prove the bad character or criminal tendencies of the accused, it may be allowed for numerous other purposes. *State* v. *Shindell,* 195 Conn. 128, 133, 486 A.2d 637 (1985). Proof of motive is a widely recognized exception to the prohibition against the admission of such evidence. *State* v. *James,* 211 Conn. 555, 578, 560 A.2d 426 (1989). Before evidence can be admitted under the motive exception, it must satisfy a two-pronged test: (1) it must be relevant and material, and (2) its probative value must outweigh its prejudicial effect. *State* v. *Marra,* 215 Conn. 716, 738, 579 A.2d 9 (1990).

In the present case, the court reasonably could have concluded that the defendant had knowledge of the incriminating articles and interfered with the search in order to prevent the police from finding those items. "[W]here the motive for the crime charged was the concealment of some other crime . . . the evidence of

---

[3] The court included the following instruction in the jury charge. "Now, here you recall that there was some evidence that was admitted and that evidence is the scanner, the vials and caps, the Dearing (phonetic) scale and the residue that was said to be—if you find that witness credible—cocaine. And I'm going to repeat what I told you then when that evidence was admitted. These items—this evidence—may not be used by you. In fact, you are expressly prohibited from using this evidence as evidence of the bad character of the defendant or as evidence of his tendency to commit criminal acts. If you find the testimony concerning one or more of these items that I've just articulated credible and if you find that the defendant had knowledge of the presence in apartment 204 or of one or more of these items of which Mr. Jenkins had knowlege, for the sole and limited purpose of assisting you in determining the motive of Mr. Jenkins and for no other purpose. You are not permitted to consider that evidence for any other purpose and as to that purpose, you must weigh such evidence as you do all the other evidence in this case."

such motive is admissible, although it tends to show the commission of an extraneous crime." 29 Am. Jur. 2d, Evidence § 325; see also 1 C. Torcia, Wharton's Criminal Evidence (14th Ed.) § 185. The defendant went to extreme and potentially violent lengths to keep the police from entering the apartment. The defendant's motive for such frantic conduct is relevant to his interference with the search, one of the crimes with which he was charged. *State* v. *Fritz,* 204 Conn. 156, 168, 527 A.2d 1157 (1987).

"Motive is a fact which may be inferred from circumstances; hence the circumstances from which it may be inferred are relevant." *State* v. *Buonomo,* 88 Conn. 177, 184, 90 A. 225 (1914). Furthermore, evidence of uncharged misconduct may come into evidence to " 'complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.' " *State* v. *Brown,* 199 Conn. 47, 56, 505 A.2d 1225 (1986), quoting C. McCormick, Evidence (3d Ed.) § 190. Without testimony describing the raid, supported by these exhibits, the jury would have had before it a naked story of a man who apparently went berserk for no reason. It was appropriate to allow the jurors to receive this evidence in order for them to comprehend what occurred when the police executed the search warrant. The circumstances surrounding the execution of the search warrant form the basis for the charge of interfering with a search. The trial court did not abuse its discretion in concluding that exhibits of drug related activity in the apartment were relevant to show that the defendant had a motive for interfering with the search and that he intentionally performed the acts constituting the elements of that crime.

Although the proffered motive evidence was relevant and material, the state must also satisfy the second prong of the test found in *State* v. *Marra,* supra, which

requires that the probative value of the motive evidence outweigh its prejudicial effect. "Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982). The defendant contends that the prejudicial effect of the drug related evidence and police testimony concerning it outweighed its probative value, and it was therefore an abuse of discretion for the trial court to allow it into evidence. We disagree.

In *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982), the court stated that relevant evidence that is potentially prejudicial should be excluded, "(1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it."

The defendant's argument that the admitted evidence unduly aroused the jury's emotions is unpersuasive. "Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous." Id., 703. All the evidence before the jury concerning the purpose of the police raid and the subsequently confiscated articles relate to the defendant's motive for interfering with the officers' search. The officers' testimony regarding the success of the raid, and the introduction of various drug related exhibits enhanced the officers' credibility, which in turn allowed probative evidence of the defendant's motive to reach the jury. None of the offered evidence was

extraneous to the charged crime, and, therefore, its admission did not prejudice the defendant.

We conclude that the trial court did not abuse its discretion by admitting the drug paraphernalia and the gun into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.