STATE OF CONNECTICUT *v.* MARCELLUS RUFFIN
(AC 15068)

O'Connell, C. J., and Spear and Sullivan, Js.

Argued March 4—officially released April 28, 1998

*Elizabeth A. Gallagher,* for the appellant (defendant).

*Denise B. Smoker,* assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, *Bruce P. Hudock,* senior assistant state's attorney, and *James Bernardi,* assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant appeals from the judgment of conviction, following a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a), attempt to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a) and manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). The defendant claims that the trial court improperly (1) admitted evidence of uncharged misconduct, (2) commented on the defendant's preconviction incarceration, (3) admitted into evidence the defendant's mug shot, and (4) failed to investigate the defendant's pro se motion to dismiss his attorney. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 3, 1993, while Alice Adams was hosting a child's birthday party in the courtyard of her apartment building in Stamford, a barrage of gunfire erupted, during which one of the children, seven year old Jasmine Merced, was struck by a stray bullet and killed.

This gun battle arose from an ongoing dispute between the "Brotherhood," a group consisting of the defendant and his friends, and a group known as the "Jamaicans," over drug territory. An additional motive for the shooting was a fight between women from each group, which ended with both sustaining minor injuries.

A member of the Brotherhood, Torik Baldwin, was arrested after being recognized as one of the July 3, 1993 shooters. In exchange for a reduced sentence, Baldwin implicated the defendant in that shooting. The defendant was thereafter arrested and charged with the crimes previously listed. Despite introducing evidence to establish an alibi defense, the defendant was convicted on all charges.

Additional facts will be discussed throughout this opinion where relevant.

I

The defendant first claims that evidence that he had been a drug dealer constitutes improper character evidence and does not come within an exception allowing the admission of prior uncharged misconduct. Consequently, the defendant claims that such evidence was improperly admitted by the trial court.

During Baldwin's testimony at trial, the state elicited evidence of the defendant's involvement in drug dealing. This evidence was offered to show that the Brotherhood, the defendant's group, and the Jamaicans conducted competing drug operations in the same neighborhood. The state maintained that this rivalry

was a motive for the shooting. Defense counsel objected, arguing that the motive for the shooting was the fight between the women. The trial court overruled the objection and concluded that the state had a right to establish a motive "above and beyond the trivial reason that two women had a fight." Moreover, the trial court instructed the jury that Baldwin's testimony was to be considered only when determining motive and that the defendant was not on trial for any drug related violation.

"Although evidence of other misconduct is not ordinarily admissible to prove the bad character or criminal tendencies of the accused, it may be allowed for numerous other purposes. . . . Proof of motive is a widely recognized exception to the prohibition against the admission of such evidence." (Citation omitted.) *State v. Jenkins*, 24 Conn. App. 330, 335, 588 A.2d 648, cert. denied, 219 Conn. 903, 593 A.2d 132 (1991). "Motive is a fact which may be inferred from circumstances; hence the circumstances from which it may be inferred are relevant." *State v. Buonomo*, 88 Conn. 177, 184, 90 A. 225 (1914).

"Before evidence can be admitted under the motive exception, it must satisfy a two-pronged test: (1) it must be relevant and material, and (2) its probative value must outweigh its prejudicial effect." *State v. Jenkins*, supra, 24 Conn. App. 335. "The problem is . . . one of balancing the actual relevancy of the other [misconduct] evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Internal quotation marks omitted.) *State v. Cooper*, 227 Conn. 417, 427, 630 A.2d 1043 (1993). " 'Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous.' " *State v. Woodson*, 227 Conn. 1, 17, 629 A.2d 386 (1993). " 'The trial court's discretionary determination that the

probative value of [such] evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown." (Internal quotation marks omitted.) Id.

In the present case, Baldwin testified that he and his coconspirators, including the defendant, were competing with the Jamaicans for the drug trade in one particular Stamford neighborhood. Moreover, in his statement to the police, Baldwin specifically stated that the defendant's brother, also a member of the Brotherhood, was angry at the Jamaicans because they were conducting drug transactions in the area he considered to be his territory. From this evidence, the jury reasonably could have concluded that the shooting was motivated, at least in part, by the drug rivalry.

Any prejudicial effect that may have been created by Baldwin's testimony concerning the defendant's drug dealing was minimized by the trial court's limiting instructions to the jury. Accordingly, the trial court properly determined that the probative value of the evidence of the defendant's drug dealing sufficiently outweighed its potential for prejudice.

II

The defendant next claims that the trial court's statement to the jury concerning the defendant's incarceration at the time of trial was prejudicial and in violation of his constitutional right to a fair trial. At the commencement of trial, but outside the presence of the jury, the trial court informed counsel that he anticipated that problems in transporting the defendant to court might irritate the jury. To avoid such a situation, the trial court proposed that he explain to the jury that because the defendant had been unable to post bond, he was being held in the sheriff's custody at the Bridgeport Correctional Center and that if there was a delay in starting trial in the morning, it would be the result of

a transportation problem.[1] The defendant did not object but, through his counsel, expressly assented to the proposed instruction. Later, as part of its final instruction, the court reminded the jury that the defendant could not be convicted solely because he had been arrested and charged with several crimes.

In the present case, not only did the defendant fail to object to the court's comments but, through counsel, affirmatively agreed that the comments could be made to the jury. It may have been a tactical decision by counsel not to object. Tactical decisions, however, will not be second guessed on appeal by an appellate court

---

[1] The trial court's complete remarks to the jury were as follows: "Ladies and gentlemen, I've spoken with counsel about this, and we've agreed to inform you of certain facts that really do not have anything to do necessarily with the evidence in this case. The defendant . . . is charged with serious offenses. And anyone who is arrested and charged with criminal offenses is entitled to post a bond guaranteeing his appearance in court. And in Connecticut, everybody who is arrested is entitled to bond. A bond has been set in the case of [the defendant]. Because of the nature of these charges, the bond that was set is a high bond. [The defendant] and his family have been unable to post that bond. As a result, the defendant is being held in lieu of bond in the Bridgeport Correctional Center. He is transported here every morning, and will be, unless he's able to post [bond], by the sheriff's department, which accounts for the presence of the sheriffs here, since he is in the custody of the sheriff's department. Those of you who are familiar with the road conditions on [Interstate] 95 in the morning and afternoon, realize that it's practically a parking lot coming down from Bridgeport to Stamford in the morning. And the same in reverse in the evening. So there will be delays in the starting of the trial sometimes in the morning because of the transportation problems. The sheriff has to get other people who are held in the same circumstances from the Bridgeport Correctional Center, which is a holding place for a large number of courts. That accounts for some of the delays. Sometimes it's caused by the court and other business as well. That's why you were held at lunchtime, until we got this business straightened out, because the sheriffs wanted to take [the defendant] into custody for lunch. And so in moving him over to the lockup, they used whatever restraints are necessary moving through this courthouse. So you were held there so that you wouldn't see that. But we've agreed that you'd come to that conclusion at any rate. I'm informing you now, he's being held in lieu of bond, instead of being able to post bond. It has absolutely no significance with regard to this case. But it may cause delays in the morning."

or by appellate counsel. See *State* v. *Davis*, 199 Conn. 88, 95, 506 A.2d 86 (1986). When the defendant consented to the instruction, he waived his right to challenge it later on appeal. See *State* v. *Anderson*, 209 Conn. 622, 633, 553 A.2d 589 (1989). Our procedure does not allow a defendant to pursue one course of action at trial and later, on appeal, argue that the path he rejected should now be open to him. *State* v. *Drakeford*, 202 Conn. 75, 81, 519 A.2d 1194 (1987). For this court to rule otherwise would result in trial by ambuscade of the trial judge. *State* v. *Prioleau*, 235 Conn. 274, 311, 664 A.2d 743 (1995). As such, the trial court properly instructed the jury as to possible reasons for the delays in the proceedings.

### III

The defendant next claims that the trial court improperly admitted into evidence a photograph of the defendant, commonly referred to as a police mug shot. It had been introduced by the state to bolster an in-court identification by one of its witnesses. The defendant argues that because the witness had known the defendant for one year prior to the date of the shooting, the photograph was unnecessary and in fact presented the defendant in an unfavorable light to the jury. The defendant contends that because the photograph had little or no probative value, the trial court committed harmful error by admitting it into evidence.

"A mug shot is admissible if it is relevant and material and if its probative value outweighs its prejudicial tendency. . . . Concealment of any police markings indicating a prior conviction, however, [mitigates] the prejudicial effect of the photograph." (Citations omitted; internal quotation marks omitted.) *State* v. *Peary*, 176 Conn. 170, 175–76, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979).

In *State* v. *Woods*, 171 Conn. 610, 612–13, 370 A.2d 1080 (1976), the state introduced into evidence a police photograph of the defendant that had been taped to conceal police markings. The defendant objected to such evidence, claiming that it informed the jury that he had a prior criminal record even though he had not testified at trial or put his character in issue. Our Supreme Court held: "That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material . . . and if the trial judge determines in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. . . .

"In [*Woods*] considerable time had elapsed between the actual commission of the crime and the date of the trial, so that the intervening photographic identification of the defendant was clearly relevant to show the reliability of the identification made by the [witnesses]. While the mug shot may have exposed the jury to an implication of a prior arrest, there was no indication of conviction. . . . Moreover, since the police markings depicted in the mug shots had been concealed, the jury might well have inferred that the photograph was taken in connection with [the crime for which he was on trial]." (Citations omitted; internal quotation marks omitted.) Id.

The defendant's identity in the present case as a participant in both the conspiracy and the shooting was an issue vigorously disputed at trial. We conclude that the state properly sought to support its witness' in-court identification, which was made almost two years after the shooting, by showing that she had selected the defendant's picture out of a photographic array more than one year earlier. Because the state had the burden of proving that the defendant was a participant in the crimes with which he had been charged, and because

the defendant's sole defense was his alibi, the photograph carried substantial probative value and was necessary to the state's case.

Any prejudicial tendency that the photograph may have had was tempered by the trial court's instruction to conceal the police placard at the bottom of the photograph before it was presented to the jury. See *State* v. *Albin*, 178 Conn. 549, 553, 424 A.2d 259 (1979); see also *State* v. *Peary*, supra, 176 Conn. 176. Moreover, the trial court instructed the jury not to draw a negative inference from the photograph. Thus, the trial court did not abuse its discretion in admitting it into evidence.

## IV

The final issue raised by the defendant is that the trial court failed to investigate the claims in the defendant's pro se motion to dismiss his attorney, thereby violating his constitutional right to a fair trial. On June 28, 1994, the trial court appointed a special public defender to represent the defendant. Approximately eight months later, the defendant filed a pro se motion asking the court to discharge his court-appointed attorney and substitute a different public defender. The principal grounds set forth in the motion were (1) that counsel had failed to provide the defendant with information that he had requested in a December 28, 1994 letter, and (2) that counsel had failed to meet with the defendant in preparation for trial.

The trial court held a hearing on the defendant's motion, at which time defense counsel advised the court that his client had the transcripts of a previous trial in which the same factual situation was involved. Defense counsel further advised the court that his office had provided the defendant with copies of what at that point were the only statements that had led to the defendant's arrest. Defense counsel also acknowledged that he had not yet met with the defendant, but he advised the court

that this was because he was waiting to meet with other witnesses whom the defendant's family was trying to contact.

The defendant was allowed to argue on his own behalf and, in doing so, stressed to the court that he was concerned that there was no lawyer-client relationship because his special public defender had not visited him. The court listened to further argument from the defendant and denied his motion.[2]

"To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner." *State* v. *Martin*, 201 Conn. 74, 82, 513 A.2d 116 (1986). "The importance of safeguarding [the right to effective assistance of counsel] led to the requirement that, under certain conditions, the trial court must explore the possibility of a conflict." *State* v. *Phidd*, 42 Conn. App. 17, 34, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997).

When a claim of ineffective assistance of counsel is raised on direct appeal, an appellate determination must be made as to whether the trial court was alerted to a possible conflict and failed to investigate it. Id., 35. The defendant claims that the trial court's failure

___

[2] The trial court's ruling on the defendant's motion was as follows: "[This court finds] nothing that would indicate any kind of inadequate counsel or misconduct of counsel here. Nothing. And, as far as [the] public defender goes, you cannot pick and choose your special public defender. You certainly—if you want to go out and hire your own attorney, that's fine. You're welcome to do that. But, if it's going to be a public defender . . . [defense counsel] has tried many cases before me. He's tried murders. And he is certainly a competent lawyer. And, I find no basis for granting this motion. So, I'm going to deny your motion. And, I'm sure [defense counsel] will do a commendable job. Okay? So, I'm going to deny your motion."

to conduct anything more than a perfunctory hearing constituted a violation of the defendant's sixth amendment right to counsel. We are not persuaded.

"[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . ." *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993). The extent of the inquiry, however, lies within the discretion of the trial court. *State* v. *Hansen*, 39 Conn. App. 384, 398–99, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). "A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." Id., 399.

In the present case, the defendant was given the opportunity at the hearing to inform the trial court of his dissatisfaction with his court-appointed counsel. The defendant clearly enunciated his reasons for the disqualification of his counsel, and the trial court concluded that those reasons did not warrant further inquiry. See *State* v. *Robinson*, supra, 227 Conn. 722. The court found that although the defendant claimed that his counsel failed to provide him with certain requested information, the defendant admitted to having such documents in his possession. Furthermore, although the defendant alleged that counsel failed to meet with him concerning the case against him, defense counsel explained that he first had to interview witnesses. We conclude that the trial court, having considered the facts submitted by the defendant, properly found that his claims were insufficient to justify substitute counsel and that no further investigation by the trial court was required.

The judgment is affirmed.

In this opinion the other judges concurred.