## STATE OF CONNECTICUT *v.* ROBERT C. HOOVER
### (AC 17365)

O'Connell, C. J., and Foti and Sullivan, Js.

Argued June 1—officially released September 7, 1999

*Richard S. Cramer,* for the appellant (defendant).

*Eileen McCarthy Geel,* assistant state's attorney, with whom were *Stephen G. Preleski,* supervisory assistant state's attorney, and *Ronald Dearstyne,* assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, Robert C. Hoover, appeals from the judgment of conviction, rendered following a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103, larceny in the sixth degree in violation of General Statutes § 53a-125b and failure to appear in the second degree in violation of General Statutes § 53a-173. The defendant claims that the trial court improperly (1) found there was sufficient evidence to support the charge of failure to appear in the second degree, (2) admitted into evidence a police photograph and (3) instructed the jury on reasonable doubt and the presumption of innocence. We affirm the judgment of the trial court.

This appeal arises out of the theft of an air conditioner from the back of a truck parked on Center Street in Southington. On the evening of June 20, 1996, Joseph Gardner and Alexander Kulesza spent the evening at a bar in Southington. Upon leaving the bar, they came upon two young men, one of whom was stealing an air conditioner out of the back of Gardner's truck. Gardner confronted the thief, pushed the air conditioner out of his hands and hit him once in the face near his eye. The perpetrator then fled. When police arrived a short time later, the two witnesses described the thief as a young man with light hair wearing a yellow T-shirt. The police took Gardner and Kulesza to the corner of West Center and South Center Streets where an officer was questioning the defendant. Both witnesses positively identified the defendant as the person who had stolen the air conditioner, and the defendant was advised of

his rights, transported to the police station, finger-printed and photographed.

The defendant was released on a written promise to appear in court on July 1, 1996. The defendant appeared on that date pro se and pleaded not guilty to the charges against him. The defendant returned to court on July 25, 1996, and was ordered to return on August 15, 1996, for a pretrial. On August 15, 1996, the defendant appeared and the pretrial was continued until September 5, 1996. The docket sheet for September 5, 1996, admitted into evidence without objection, affirms that the defendant failed to appear on that date. The court issued a rearrest order and set a new bond.

On September 9, 1996, the defendant came to the courthouse and filed a pro se motion to vacate the rearrest order. In his motion, the defendant stated that he failed to appear because of an out of state wedding. The defendant's motion was denied and the defendant was arraigned on the failure to appear charge.

At trial, the defendant testified that he had not gone out of state for a wedding, but that he had gone out of state to visit a friend from August 15 until September 8, 1996, and that he missed his September 5, 1996 appearance because he mistakenly thought that his case was continued until September 9, 1996.

I

The defendant first claims that there was insufficient evidence to convict him of failure to appear in the second degree. Specifically, the defendant contends that the state did not prove beyond a reasonable doubt that he wilfully failed to appear in court.

The standard of review for a sufficiency of the evidence claim is well settled. "In reviewing [a] sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable

to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994).

Section 53a-173 provides that, to secure a conviction for failure to appear in the second degree, the state must prove beyond a reasonable doubt that the defendant was legally ordered to appear under the terms of his bail bond, that he failed to appear and that such failure was wilful. To prove the wilful element of failure to appear "the state must prove beyond a reasonable doubt . . . that the defendant received and deliberately ignored a notice to appear . . . ." (Internal quotation marks omitted.) *State* v. *Cassidy*, 236 Conn. 112, 135, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996).

In this case, the transcript of August 15, 1996, which was read to the jury, clearly demonstrated that the defendant received oral notice of the order to appear for a pretrial on September 5, 1996. The state further provided evidence that the defendant signed his appearance bond in which he agreed to appear in court on the date assigned to him and on any subsequent dates, and acknowledged that he understood that he would be charged with failure to appear if he did not appear on any date on which he was ordered to appear. The defendant did not notify the court of his inability to appear prior to missing the September 5 court date but, instead, filed a motion four days after his failure to appear asserting an admittedly false reason for his absence. Although the defendant testified at trial that he did not know that his court date was set for September 5, 1996, the jury was not required to credit that testimony. Instead, the jury was entitled to rely on the transcript and the signed appearance bond to infer that

the defendant had knowledge of his obligation to appear in court on September 5, and wilfully chose not to attend. It is the function of the jury to consider the evidence and to judge the credibility of witnesses. *State* v. *Dudla*, 190 Conn. 1, 7, 458 A.2d 682 (1983). The jury is free to accept or reject all or part of a witness' testimony. *State* v. *Brigandi*, 186 Conn. 521, 531, 442 A.2d 927 (1982). "Although some evidence may be inconsistent with the state's theory of the case, the jury is not bound to credit only that evidence to the exclusion of evidence consistent with the state's theory. *State* v. *Pinnock*, 220 Conn. 765, 775–76, 601 A.2d 521 (1992)." *State* v. *Salz*, 226 Conn. 20, 29–30, 627 A.2d 862 (1993). Consequently, the defendant's sufficiency claim must fail.

## II

The defendant's second claim[1] is that the trial court improperly admitted into evidence a photograph of him, commonly known as a mug shot, which was taken by the police at the time of his arrest. He claims that it was both irrelevant and prejudicial.

" 'A mug shot is admissible if it is relevant and material and if its probative value outweighs its prejudicial tendency. . . .' *State* v. *Peary*, 176 Conn. 170, 175–76, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979)." *State* v. *Ruffin*, 48 Conn. App. 504, 510, 710 A.2d 1381, cert. denied, 245 Conn. 910, 718 A.2d 18 (1998). "The primary responsibility for conducting the prejudicial-probative balancing test rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." *State* v. *Figueroa*, 235 Conn. 145, 162, 665 A.2d 63 (1995).

In this case, identification of the defendant as the individual who had stolen the air conditioner was at

---

[1] At oral argument before this court, defense counsel attempted to withdraw this claim. Due to lack of certainty as to whether the withdrawal was with the defendant's consent, we elect to consider it.

issue. Both of the witnesses testified at trial that the perpetrator of the burglary and larceny had light hair and wore a yellow T-shirt. They further testified that Gardner had struck the perpetrator in the face near the eye. Although both witnesses positively identified the defendant as the perpetrator on the evening of the crime, neither could identify the defendant in court nine months later. The photograph in question was taken shortly after the crime and showed the defendant wearing a yellow T-shirt and bearing a facial injury next to his eye. The photograph was clearly relevant, therefore, to the identification of the defendant as the perpetrator.

The defendant also claims that the admission of the mug shot was more prejudicial than probative. Before it was offered into evidence, all police identifying markings were removed from the photograph. Even without removal of the markings, however, we are unable to understand any claim of prejudice.

Defendants commonly object to the introduction of mug shots from *prior arrests* on the ground that the jury may infer that they have criminal records and are therefore more likely to have committed the charged crime than would a person with no record. See, e.g., *State* v. *Woods*, 171 Conn. 610, 612–13, 370 A.2d 1080 (1976); *State* v. *Ruffin*, supra, 48 Conn. App. 510–11; *State* v. *Harris*, 43 Conn. App. 830, 838, 687 A.2d 544 (1996). In the present case, however, the photograph was taken in connection with the very case for which the defendant was on trial. We cannot conclude that it came as a surprise to the jurors that a person on trial before them for burglary, larceny and failure to appear had been arrested for those crimes. The claim of prejudice, therefore, has no merit.

III

The defendant's final claim is that the trial court improperly instructed the jury on reasonable doubt and

the presumption of innocence. The defendant did not object at trial to either of these instructions and has failed to seek review of them under the doctrine of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] This court will not review claims that were not distinctly raised in the trial court. Practice Book § 60-5; *State* v. *Tillman*, 220 Conn. 487, 504, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 716, 535 A.2d 799 (1988). Under an exception to that rule, a defendant may prevail on a claim of constitutional error not preserved at trial if all the conditions of *State* v. *Golding*, supra, 239–40, are met. It is well established, however, that to obtain extraordinary review of an unpreserved claim under *Golding*, the defendant must make a claim of entitlement, invoking the *Golding* reviewability doctrine and discussing its application. Where the defendant fails to invoke the *Golding* doctrine as a basis for review of a claim or fails otherwise to brief any claim of entitlement to such review, his claim is not reviewable. *State* v. *Jones*, 50 Conn. App. 338, 346–47, 718 A.2d 470 (1998); *State* v. *Teel*, 42 Conn. App. 500, 504, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996). Accordingly, we decline review of this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] Under the *Golding* guidelines, a defendant can prevail on a constitutional claim, not preserved at trial, only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. If any one of these conditions is missing, the defendant's claim will fail.