STATE OF CONNECTICUT *v.* BRENT MCCALL
(AC 18073)

Foti, Landau and Pellegrino, Js.

Argued December 8, 2000—officially released March 6, 2001

*Michael T. Wade*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan K. Alexander*, former assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Brent McCall, appeals from the judgment of conviction, following a jury trial, of criminal attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault of a peace officer in violation of General Statutes (Rev. to 1995) § 53a-167c (a) (1), and two counts each of attempt to commit assault of a peace officer in violation of General Statutes § 53a-49 (a) (2) and General Statutes (Rev. to 1995) § 53a-167c (a) (1), and attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1). The defendant pleaded guilty to criminal possession of a firearm in violation of General Statutes § 53a-217 and carrying a pistol without a permit in violation of General Statutes § 29-35.[1] The court imposed an effective sentence of forty-five years imprisonment.

---

[1] The state withdrew the charge against the defendant of criminal use of a firearm in violation of General Statutes § 53a-216.

On appeal, the defendant claims that the court improperly (1) permitted the state (a) to introduce evidence of the defendant's prior misconduct and (b) to cross-examine the defendant about other misconduct, and (2) denied his motion for a new trial in which he claimed that the jury improperly interpreted the evidence and the instructions given by the court. We disagree.

The jury reasonably could have found the following facts. At approximately 7:30 p.m. on May 18, 1996, John Reilly, a Bristol police officer, was sitting in his police vehicle on Addison Street in Bristol, conducting surveillance in an unrelated matter.[2] When he saw the defendant drive a white Oldsmobile into the driveway at 11 Addison Street, Reilly drove his vehicle into the driveway behind the defendant's vehicle.

The defendant remained in his vehicle for five to ten seconds, frequently looking into his rearview mirror. He then got out of the vehicle and walked through the yard, keeping his back to Reilly. The defendant walked quickly and with his hands exposed. Reilly thought that the defendant was trying to evade him but perceived no danger. Reilly lost sight of the defendant when he walked behind a garage on the premises. Reilly exited his vehicle and followed the defendant. As Reilly stepped around a corner of the garage, the defendant turned toward him with a gun in his hand and shot Reilly twice, once in the arm and once in the leg. Although he had fallen to the ground, Reilly drew his service weapon and shouted, "Police." The defendant ran but stopped in front of Reilly, aimed his gun and fired six more shots at the officer.[3] Reilly shot the defendant twice in the left leg before the defendant fled the scene on foot.

---

[2] Reilly was watching 11 Addison Street, waiting for the return of a man suspected of having committed domestic violence there.

[3] Reilly suffered multiple injuries to his large and small intestines that required a bowel transection. The bones in his left forearm were shattered and required multiple surgeries. Reilly also lost the motor function in the

The defendant was identified as a suspect in the shooting. Kevin Mellon and Brian Suchinski, detectives with the Bristol police department, were assigned to observe 307-309 Main Street in Bristol, where the defendant's mother lived. At about 11:30 p.m., Mellon walked through the backyard of the premises to a vacant lot on Summer Street and saw the defendant across the street, walking toward him. Mellon alerted Suchinski and observed the defendant walk away from him. Both detectives shouted, "Stop, police!" At first, the defendant did not respond to the detectives but continued walking away. Suddenly, the defendant turned and fired two shots at the detectives. Mellon returned fire, striking the defendant several times. The defendant fell to the ground with his gun still in his hand.

The defendant was taken to Bristol Hospital, where he received emergency treatment. While he was being treated, the defendant told Barry McNeil, a physician, that he was in trouble for shooting at several police officers. As he was being transported to Hartford for surgery, the defendant answered, in response to a medically related question from Jamie Young, an emergency medical technician, "Because I shot at three police officers." At the Walker Reception Center, where he was incarcerated, the defendant told Brian Sherman, a paramedic, that he shot Reilly in the stomach and fired at Mellon and Suchinski. The defendant told Sherman that he shot Reilly because he, the defendant, was afraid of being arrested and because Reilly worked for the judicial system that had failed the defendant. The defendant also told Sherman that he wished that he had killed Reilly before the officer shot at him, and that he shot at Mellon and Suchinski to "take them out" before they "took me out." At trial, the defendant admitted that he shot Reilly, but claimed that he did so because he was

---

muscles in the front of his left leg and suffers from a condition known as foot drop. He forever will have to wear a leg brace to walk properly.

under the influence of hallucinogenic mushrooms. He denied shooting at Mellon and Suchinski.

The state introduced evidence from the Oldsmobile and the Addison Street shooting that confirmed that the defendant fired at Reilly. The defendant's fingerprints were found in the Oldsmobile and on the shell casings found at the scene of the shooting. The police, however, found no shell casings from the defendant's gun at the Summer Street shooting scene.

The jury returned a verdict of guilty on all counts. The court gave the defendant one week to file posttrial motions. The defendant filed a motion for a new trial, claiming that the jury improperly interpreted the facts in light of the court's jury instructions. The court denied the motion. Following sentencing, the defendant appealed.

I

The defendant claims that the court abused its discretion by permitting the state to present evidence of the defendant's prior misconduct. Specifically, the defendant claims that the court improperly permitted the state (1) to introduce evidence of the defendant's prior misconduct during its case-in-chief and (2) to cross-examine the defendant about his prior misconduct. We disagree.

The following facts are relevant to this claim. Prior to trial, the defendant informed the state that he intended to rely on the special defense of impaired mental capacity because, at the time of the incidents, he claims to have been under the influence of hallucinogenic mushrooms and therefore was incapable of forming the intent to cause serious bodily injury. To prove the element of intent to cause serious bodily injury during its case-in-chief, the state proffered the testimony of Kevin Hayes, Amy Dandelski and Thomas Veiva

to prove that the defendant had a motive to injure the police officers and to avoid arrest. The defendant objected to the testimony as being irrelevant and extremely prejudicial to his case. Outside the presence of the jury, the state made offers of proof with respect to each witness.[4] The court ruled that the proffered testimony concerning the outstanding warrants and a particular bank robbery was relevant to the defendant's intent but that the details with respect to the warrants were more prejudicial than probative. The court therefore limited the testimony that the state could elicit from Hayes and Dandelski.[5] The state abided by the court's ruling. At the conclusion of Hayes' testimony, the court instructed the jury that his testimony was "not offered as evidence of any other crime or occurrence reflecting on the defendant's character," and could be used "only to show a reason for concern on the defendant's part with respect to the presence of a police officer at 11 Addison Street."

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substan-

---

[4] Hayes, a police officer, would testify that on the night of the shootings, he considered the defendant to be a suspect in the Reilly shooting on the basis of his knowledge of arrest warrants outstanding against the defendant. Dandelski, the defendant's former companion and the mother of his child, would testify that the defendant showed her his gun, told her that he had participated in a bank robbery and was afraid that the police would be able to identify him because a dye pack exploded and that he did not want to go back to jail. Veiva, a special agent of the Federal Bureau of Investigation, would testify about a bank robbery in which a dye pack exploded and the robbers were seen in the defendant's white motor vehicle.

[5] Hayes was permitted to testify only that there were warrants outstanding against the defendant but not about the nature of their related charges. Dandelski was permitted to testify only that the defendant had told her that he had participated in a bank robbery and was afraid that he would be identified because the dye pack exploded and that he did not want to return to jail.

tial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *McClendon*, 45 Conn. App. 658, 671, 697 A.2d 1143 (1997), aff'd, 248 Conn. 572, 730 A.2d 1107 (1999).

A

The defendant's first evidentiary claim is that the court abused its discretion by permitting the state to introduce evidence during its case-in-chief concerning the defendant's prior misconduct. We disagree.

"Although evidence of other misconduct is not ordinarily admissible to prove the bad character or criminal tendencies of the accused, it may be allowed for numerous other purposes. . . . Proof of motive is a widely recognized exception to the prohibition against the admissions of such evidence. . . . Before evidence can be admitted under the motive exception, it must satisfy a two-pronged test: (1) it must be relevant and material, and (2) its probative value must outweigh its prejudicial effect." (Citations omitted.) *State* v. *Jenkins*, 24 Conn. App. 330, 335, 588 A.2d 648, cert. denied, 219 Conn. 903, 593 A.2d 132 (1991).

Here, the court listened to the state's offer of proof and heard the arguments of both parties. It then weighed the relevance of the proffered evidence against the prejudice to the defendant. The defendant put his ability to formulate the intent to cause serious physical injury at issue by asserting an impaired mental capacity defense. The testimony from the three witnesses about the warrants outstanding against the defendant and his involvement in a bank robbery was therefore relevant to explain his wanting to avoid the police. The court

minimized the prejudicial effect of the proffered evidence by limiting the scope of the testimony and by giving the jury a limiting instruction immediately after Hayes testified. It is well established that in the absence of evidence to the contrary, a jury is presumed to follow the instructions given by the court. *State* v. *Gray,* 221 Conn. 713, 730, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992). We therefore conclude that the court did not abuse its discretion by permitting the state to put evidence of the defendant's prior misconduct into evidence during its case-in-chief.

## B

The defendant's claim with respect to the state's cross-examining him about prior misconduct is not reviewable. At the close of the state's case-in-chief, the defendant filed a motion in limine seeking to prevent the state from cross-examining him about his prior misconduct. The parties stipulated to the court's ruling.[6] Appellate courts "do not review rulings that the defendant accepted or requested at trial . . . ." *State* v. *Hall,* 28 Conn. App. 771, 780, 612 A.2d 135, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992). We therefore will not review this aspect of the defendant's claim.

---

[6] The transcript contains the following colloquy between the court and counsel:

"[Defense Counsel]: The defense filed a motion this morning, Your Honor, with respect to the prior record.

\* \* \*

"[Defense Counsel]: This was discussed in chambers. I think essentially we probably agree with what the ruling is going to be.

"The Court: All right. And with respect to—one of the convictions was for assault in the first degree. That state is agreeable to refer to that conviction as a felony conviction.

"[Prosecutor]: Yes.

"The Court: And with respect to the six counts of bank robbery, the state can refer to those by name. And with respect to the one count of possession of a destructive device, that will be referred to as a felony conviction. Is that the understanding between the parties?

"[Defense Counsel]: Yes, Your Honor . . . ."

## II

The defendant's second claim is that the court improperly denied his motion for a new trial because the jury improperly interpreted the facts in light of the court's jury instructions. The defendant claims more specifically that the jury speculated about evidence not contained in the record. The defendant's claim concerns his conviction related to his shooting at Mellon and Suchinski, i.e., the two charges of attempt to commit assault of a peace officer, §§ 53a-49 (a) (2)[7] and 53a-167c (a) (1),[8] and two charges of attempt to commit assault in the first degree, §§ 53a-49 (a) (2) and 53a-59 (a) (1)[9] (counts four through seven of the information).

"[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion. *State* v. *Rothenberg*, 195 Conn. 253, 264, 487 A.2d 545 (1985). *State* v. *Leavitt*, 8 Conn. App. 517, 524, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986). As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she

[7] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[8] General Statutes (Rev. to 1995) § 53a-167c (a) provides in relevant part: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his duties, (1) he causes physical injury to such peace officer . . . ."

[9] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

166D

*(This page intentionally left blank)*

has personally presided." (Internal quotation marks omitted.) *Munson* v. *United Technologies Corp.*, 28 Conn. App. 184, 194–95, 609 A.2d 1066 (1992).

The following procedural history is necessary for our review of the defendant's claim. During its deliberations, the jury sent the court a note, asking: "We need to know if pointing at somebody constitutes attempted assault in the first degree even though the weapon was not fired." The court responded, "I assume by pointing, you mean pointing at somebody with a gun. Is that what you're referring to?" The jury responded in the affirmative. The court then reinstructed the jury on that portion of its charge concerning criminal attempt.[10] Forty minutes later, the jury returned its guilty verdict,

---

[10] With respect to criminal attempt, the court instructed the jury as follows: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, in this case, assault in the first degree, he intentionally does anything which, under the circumstances as he believes them to be, is an act constituting a substantial step in a course of conduct planned to culminate in his commission of the assault in the first degree.

"Under the circumstances, in other words . . . under the circumstances as he believes them to be, he must have engaged in conduct which was a substantial step in a course of conduct which he planned to end in the commission of assault in the first degree.

"To be a substantial step in that planned course of conduct, his conduct must be strongly corroborative of his criminal purpose; in other words, strongly supportive of his criminal purpose, his criminal intent.

"Now, preparation to commit a crime standing alone is not necessarily sufficient, but some preparations may be sufficient. Whether the preparation is sufficient to constitute an attempt is a matter of degree. If the preparation done with the intent to commit the crime, intent to commit assault in the first degree here, came very near the completed crime, that will be sufficient even though there still may be something left to be done to complete the crime. The conduct of the defendant, done with the intent to commit the underlying crime, is sufficient if it's adapted to the commission of that crime even though it fails because of interruption or some other outside cause.

"It is sufficient if the defendant's acts are the start of a line of conduct which would lead naturally to the commission of the crime, and if that crime appears to the defendant to be possible of commission by the means which he has chosen."

which encompassed counts four through seven of the information.

The defendant does not take exception to the court's charge, but argues that the jury misapplied the evidence. At trial, the defendant admitted shooting Reilly, but denied pointing a gun at or shooting Mellon and Suchinski. The state presented testimony from several police officers and a bystander that the defendant had fired at the officers first. The police, however, found no physical evidence such as bullet casings from the defendant's gun at the Summer Street scene. The defendant argues, speculatively, that, because the jury rendered its verdict forty minutes after the court reinstructed it on criminal attempt, the jury misapplied the evidence because there was no version of the evidence that the defendant merely pointed his gun at Mellon and Suchinski. The substance of the defendant's argument is that the jury's verdict was improper unless it conformed to either the state's version of the evidence or the defendant's version of the evidence. We disagree.

"We cannot speculate, as the [defendant] would have us do, as to how and why the jury arrived at its verdict." *Mack* v. *LaValley*, 55 Conn. App. 150, 160, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). "While the jury may not speculate to reach a conclusion of guilt, [it] may draw reasonable, logical inferences from the facts proven to reach a verdict." *State* v. *Williams*, 16 Conn. App. 75, 79, 546 A.2d 943 (1988). We give deference to the trier of fact, who had the opportunity to observe the conduct, demeanor and attitude of the trial witnesses, and to assess their credibility. *State* v. *Miranda*, 41 Conn. App. 333, 338, 675 A.2d 925 (1996), rev'd on other grounds, 245 Conn. 209, 715 A.2d 680 (1998). The "jury can accept all, part or none of the testimony of a witness." *State* v. *Fullard*, 5 Conn. App. 338, 342, 497 A.2d 1041 (1985). "Where there is sufficient

evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984).

We do not know, on the record before us, how or why the jury found the defendant guilty of both attempt to commit assault of a peace officer and attempt to commit assault in the first degree. The length of time between the jury's having sent its note to the court and when it reached its verdict is of no consequence. The record contains sufficient evidence, when viewed in conjunction with the court's instructions on criminal attempt, from which the jury reasonably could have found the defendant guilty on counts four through seven.

The defendant speculates, on the basis of the note to the court, that the jury concluded that the defendant only pointed his gun at Mellon and Suchinski. Although we do not accept the defendant's speculation as fact, for the purposes of our analysis, we conclude that the jury reasonably could have come to the following result: The jury reasonably could have believed that part of the state's evidence proving that the defendant pointed his gun at Mellon and Suchinski, and the defendant's testimony that he did not fire at the officers, and could have concluded that pointing the gun at the officers was a substantial step in the defendant's planned course of conduct. For those reasons, the court did not abuse its discretion by denying the defendant's motion for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.