# STATE OF CONNECTICUT *v.* EUGENE DEWS
## (AC 24160)

Foti, Dranginis and Flynn, Js.

Argued October 22, 2004—officially released January 25, 2005

*Suzanne Zitser*, assistant public defender, with whom, on the brief, was *Margaret I. Castinado*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Robert M. Brennan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Eugene Dews, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A)[1]

---

[1] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] On appeal, the defendant claims that (1) the trial court violated his rights to a fair trial, notice and due process when it took a position of advocacy and characterized otherwise inadmissible evidence as uncharged misconduct and failed to conduct a balancing test, (2) the court acted improperly when it struck only a portion of a witness' uncharged misconduct testimony and then gave an inadequate limiting instruction regarding the stricken portion of the testimony, (3) his rights to due process and a fair trial were violated as a result of prosecutorial misconduct, (4) the court violated his sixth amendment right to effective assistance of counsel and (5) the court violated his sixth amendment right to present a defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. D, S, N and L,[3] who were all minors, would visit the defendant's house to play video games.[4] D, S and N, while staying overnight at the defendant's house,

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[3] In accordance with the spirit and intent of General Statutes § 54-86e, we decline to identify the victims by name or others through whom the victims' identities may be ascertained.

[4] Until the second day of trial, on December 17, 2002, there was an information charging the defendant with three counts of sexual assault in violation of General Statutes § 53a-73a (a) (1) (A), three counts of threatening in violation of General Statutes § 53a-62 (a) (1) and three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). That information did not specify the name of any victim. The court brought that omission to the attention of the state and the defendant during argument on the defendant's motion to strike. Until that juncture, it was not clear from the charging document whether L, D, S, N or some other person was the victim of the crimes. The issue was clarified when the state made clear on the record that D, S and N were each victims of the crimes of sexual assault, threatening and risk of injury to a child.

would wake up to find the defendant touching their genitals. D would go to sleep at the defendant's house fully clothed and wake up naked. D and S would take showers with the defendant, and the defendant would masturbate and wipe the excretions on the legs and backs of D and S. D, S and N discussed these incidents, and in December, 2001, they told their parents and the police about them.

The defendant was convicted of sexual assault in the fourth degree as to D and S, and risk of injury to a child as to D, S and N. The defendant's total effective sentence was twenty years incarceration, execution suspended after fifteen years, with twenty years probation. Additional facts will be recited as they become relevant.

I

The defendant first claims that the court denied him his rights to a fair trial, notice and due process when it "improperly engaged in advocacy by admitting uncharged misconduct [evidence], by abdicating its role as gatekeeper for admission of this evidence and by failing to give a limiting instruction as to this evidence." The defendant seeks review of his unpreserved claim pursuant to State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The second prong of Golding requires that the unpreserved claim be of constitutional magnitude. Id., 239.

The defendant claims that the admission of the evidence that the court characterized as "uncharged misconduct" deprived him of certain constitutional rights. We are not persuaded by this claim. "[T]he defendant would have us place a constitutional label on what is not an error of constitutional proportion. [I]t would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.)

*State* v. *Jenkins*, 271 Conn. 165, 190, 856 A.2d 383 (2004). "[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Internal quotation marks omitted.) *State* v. *Izzo*, 82 Conn. App. 285, 291 n.2, 843 A.2d 661, cert. denied, 270 Conn. 902, 853 A.2d 521 (2004).

We set forth the following additional facts. The state had charged the defendant with risk of injury to a child in violation of § 53-21 (a) (2), which requires the defendant to have had contact with the intimate parts of a child. Despite the existence of pretrial videotaped testimony,[5] S and D testified from the witness stand at trial. However, the testimony of S and D was different from what the state had expected in one important respect. At trial, they testified that during the shower incident, the defendant had touched their backs and legs, which are not defined as intimate parts under General Statutes § 53a-65 (8). Their testimony at trial, unlike their pretrial taped testimony, left out references to the buttocks, which is defined as an intimate part under § 53a-65 (8). On the basis of the trial testimony, the state sought to amend the two counts of risk of injury pursuant to § 53-21 (a) (2) to two counts of risk of injury pursuant to § 53-21 (a) (1), which proscribes conduct placing children in situations or doing any act where either the child's health is likely to be injured or the child's morals impaired.[6] This amendment would

---

[5] It is not clear from the record, briefs or file why a videotape was taken of the boys' testimony, as we can find no *Jarzbek* motion in the file. See *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that . . . the health of such child is likely to be injured or the morals of such child are likely to be

have eliminated the need to prove that the defendant had contact with the intimate parts of a child. The court denied the motion to amend because it ruled that the motion was made so late in the proceedings that it would be prejudicial to the defendant. However, the court then ruled, sua sponte, that "the court would well treat this additional conduct by the defendant as some type of uncharged misconduct. Certainly, it fits into that category. So, I would just add that so you are aware of the court's ruling for those reasons."[7] The defendant had not objected to the introduction of this testimony when it was offered, nor did he seek to strike the testimony or any portion thereof after the court had denied the state's motion to amend and characterized it as "uncharged misconduct." Additionally, the defendant did not request that the court give a limiting instruction as to this testimony. Nevertheless, the defendant now complains that the court improperly admitted the testimony, despite his failure to object, and that it failed to give a limiting instruction, sua sponte.

In essence, the defendant attempts "to put a constitutional tag on a nonconstitutional evidentiary ruling. . . . We previously have stated that the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks omitted.) *State v. Gentile*, 75 Conn. App. 839, 847, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003). The error claimed by the defendant in the present case is simply evidentiary in nature. The defendant had numerous occasions on which to demonstrate that he thought that this testimony was improper, prejudicial or of limited

impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

[7] We assume, without deciding, that this testimony was properly characterized as uncharged misconduct.

use to the jury. The defendant never objected to the introduction of the testimony, did not make a motion to strike the testimony in whole or in part and did not request a jury charge or limiting instruction as to the use of this testimony. Furthermore, the state had notified the defendant that it was planning to present the shower-masturbation testimony of S and D at trial. The fact that the victims testified in a less damaging manner than expected does not now give the defendant a constitutional claim on appeal.

In anticipation of failing to satisfy the second prong of *Golding*, the defendant also seeks plain error review. See Practice Book § 60-5. "As we often have stated, [p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Internal quotation marks omitted.) *Menon* v. *Dux*, 81 Conn. App. 167, 172, 838 A.2d 1038, cert. denied, 269 Conn. 913, 852 A.2d 743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004).

The defendant claims that the court, sua sponte, should have stricken the shower testimony and offered a limiting instruction as to its use. The defendant did not object to this testimony, he failed to seek to have the testimony stricken, and he did not request a limiting instruction. Nor did he take exception to the court's failure to give a limiting instruction. "[W]hen opposing counsel does not object to evidence, it is inappropriate for the trial court to assume the role of advocate and

decide that the evidence should be stricken. . . . The court cannot determine if counsel has elected not to object to the evidence for strategy reasons. . . . Experienced litigators utilize the trial technique of not objecting to inadmissible evidence to avoid highlighting it in the minds of the jury. Such court involvement might interfere with defense counsel's tactical decision to avoid highlighting the testimony. When subsequent events reveal that it was an imprudent choice, however, the defendant is not entitled to turn the clock back and have [the appellate court] reverse the judgment because the trial court did not, sua sponte, strike the testimony and give the jury a cautionary instruction." (Citations omitted; internal quotation marks omitted.) *State* v. *Wragg*, 61 Conn. App. 394, 399, 764 A.2d 216 (2001).

Furthermore, the defendant has not provided any authority for the proposition that the court must give a limiting instruction, sua sponte, under the circumstances of this case. *"It is well established in Connecticut . . . that the trial court generally is not obligated, sua sponte, to give a limiting instruction."* (Emphasis in original; internal quotation marks omitted.) *State* v. *Izzo*, supra, 82 Conn. App. 298, quoting *State* v. *Cator*, 256 Conn. 785, 801, 781 A.2d 285 (2001); *State* v. *Niemeyer*, 55 Conn. App. 447, 458, 740 A.2d 416 (1999), rev'd in part on other grounds, 258 Conn. 510, 782 A.2d 658 (2001). "The failure by the trial court to give, sua sponte, an instruction that the defendant did not request, that is not of constitutional dimension and that is not mandated by statute or rule of practice is not such an obvious error that it will affect the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Johnson*, 65 Conn. App. 470, 478, 783 A.2d 1057, cert. denied, 258 Conn. 930, 783 A.2d 1031 (2001).

Here, the court appropriately instructed the jury on the proper use of evidence and that certain matters

were not evidence. It also instructed the jury on the elements of the crimes charged. Additionally, the court provided a limiting instruction where the defendant had sought one. Accordingly, we conclude that the defendant's claim fails to meet the stringent requirements of plain error review.

## II

The defendant next claims that the testimony of L disclosed uncharged misconduct and, thus, the court acted improperly when it did not strike the testimony in its entirety. He further claims that the court gave an inadequate limiting instruction regarding the stricken testimony. As a result, the defendant asks for a new trial. We conclude that any error that was committed was harmless.

The following additional facts are necessary to resolve this issue. L testified that he and S would visit the defendant's house and would go to sleep clothed and wake up naked. L further testified that the defendant told both him and S that if they revealed this to anyone, the defendant would hurt him and S "real bad." The prosecutor had charged the defendant with threatening S, but dropped that charge during trial. The defendant then moved to strike L's testimony in its entirety. The court determined that L's testimony regarding the defendant's threats constituted evidence of uncharged misconduct, but the court let the testimony stand. The court struck the portion of L's testimony in which he described going to sleep clothed and waking up naked, and it later gave the jury a limiting instruction regarding the stricken portion of L's testimony: "[T]here was some testimony by [L] that he said that he went to sleep. But before he went to sleep—and your recollection of the facts governs—but before he went to sleep, his clothes were all on. And that when he woke up his clothes were off and so forth. [L] is not the victim. So, you

should disregard the testimony with respect to his clothes and what effect—that's not one of the three [victims] in the case. So, if you can, I ask you to disregard that aspect of the testimony." The defendant did not except to this instruction.

A

The defendant claims that the court acted improperly when it did not strike L's testimony in its entirety, which the defendant claims would have eliminated any consideration of evidence of threats made by the defendant to L. The defendant's claim is preserved because defense counsel objected to L's testimony and subsequently moved to strike it. Thus, in reviewing a preserved claim, "[a]s a threshold matter, we set forth the standard by which this court reviews a challenge to a trial court's [evidentiary ruling]. The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 326, 746 A.2d 761 (2000).

"Under the current and long-standing state of the law in Connecticut, the burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result. . . . The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Citations omitted; internal quotation marks omitted.) *State* v.

*Booth,* 250 Conn. 611, 638, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut,* 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

After the state dropped its charge that the defendant had threatened S, the defendant moved to strike L's entire testimony. The court ruled that L's testimony that the defendant had threatened him and S not to tell anyone was uncharged misconduct and allowed it to stand. "As a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused. . . . Nor can such evidence be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Evidence may be admissible, however, for other purposes, such as to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency." (Citations omitted; internal quotation marks omitted.) *State* v. *George B.,* 258 Conn. 779, 790, 785 A.2d 573 (2001).

Even if we assume, without deciding, that the court's ruling was improper, we conclude that it was harmless. Given the strength of the state's case, the court's admission of L's testimony that the defendant had threatened him and S was not harmful and did not deprive the defendant of a fair trial. The testimony of N and D that the defendant touched their genitals was sufficient evidence for the jury to determine that the defendant committed sexual assault. Testimony by a third party, L, that the defendant told him and S not to tell anyone about the incidents did not add anything inflammatory or prejudicial that was likely to have affected the result of the trial. The defendant was charged with and convicted of sexual assault and risk of injury to a child on the basis of his *acts* of touching the genitals of children and conduct likely to impair the morals of children, not on the basis of his *words.* L's testimony that the

defendant had threatened him and S related the *words* the defendant spoke to L. Any prejudice that might have resulted from L's testimony was insignificant. Furthermore, as to any evidentiary ruling the defendant claims was improper, it is the defendant's burden to show that it is more probable than not that the court's ruling affected the result of the trial. See *State* v. *Booth*, supra, 250 Conn. 638. The defendant has not met this burden and has not proven that the jury would not have convicted him of sexual assault and risk of injury to a child without L's testimony about the defendant's threats. In light of the strength of the state's case, that is an improbable conclusion. We therefore conclude that any error committed in not striking L's testimony regarding the defendant's threats was harmless, given the state's case.

B

The defendant further claims that the court gave an inadequate limiting instruction with regard to L's testimony. The court instructed the jury to disregard L's testimony relating to going to sleep clothed and waking up naked: "[Y]ou should disregard the testimony with respect to his clothes and what effect—that's not one of the three [victims] . . . . So, if you can, I ask you to disregard that aspect of the testimony." The defendant asserts that the charge was erroneous because the court did not mandate, but only suggested, that the jury disregard L's stricken testimony "if you can . . . ."[8] Because the defendant did not take an exception to the instruc-

---

[8] We note that our review must consider the charge as a whole. See *Fenner* v. *Hartford Courant Co.*, 77 Conn. App. 185, 193, 822 A.2d 982 (2003). In its final charge to the jury, the court stated: "If testimony was stricken, you must disregard it." "[G]reater weight is likely to have been given by the jury to a later statement than to an earlier one; and this principle operates at times to cure an error in the earlier statement . . . . W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 95, p. 114." (Internal quotation marks omitted.) *State* v. *Giordano-Lanza*, 83 Conn. App. 811, 823, 851 A.2d 397, cert. granted on other grounds, 271 Conn. 911, 859 A.2d 572 (2004).

tion when given, we review his unpreserved claim under *State* v. *Golding, supra*, 213 Conn. 239–40, and we conclude that it fails under *Golding*'s second prong.

The court instructed the jury: "So, *if you can*, I ask you to disregard that aspect of the testimony." (Emphasis added.) We reiterate that as a general rule, "the failure of the trial court to give a limiting instruction concerning the use of evidence of prior misconduct is not a matter of constitutional magnitude." (Internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). If the failure to give *any* limiting instruction is not of constitutional magnitude, it would follow that the claimed failure to give an *adequate* limiting instruction likewise is not of constitutional magnitude. We therefore conclude that this claim fails under the second prong of *Golding*.

We also decline to afford this claim plain error review. It is not such a truly extraordinary situation in which the existence of the claimed error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. See *State* v. *Eason*, 47 Conn. App. 117, 120, 703 A.2d 130 (1997), cert. denied, 243 Conn. 962, 705 A.2d 552 (1998).

III

The defendant also claims that he was deprived of his due process right to a fair trial as a result of the state's improper closing arguments. Specifically, the defendant asserts that the prosecutor committed misconduct during his closing argument when he violated the court's order by referring to evidence that the court had instructed the jury to disregard. The defendant claims that the prosecutor improperly called him a liar and vouched for the credibility of the state's witnesses. The defendant's claims are unpreserved. However, we

review them under the rules set down in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

"[Our Supreme court has] articulated the principles that govern our review of claims of prosecutorial impropriety during closing arguments. [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [M]oreover . . . [a defendant is not entitled to prevail on unpreserved claims] whe[n] the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial misconduct] we must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 640, 841 A.2d 181 (2004).

A primary inquiry in any claim of prosecutorial misconduct is to determine whether the conduct in fact was improper. *State* v. *Ceballos*, 266 Conn. 364, 375, 832 A.2d 14 (2003); *State* v. *Singh*, 259 Conn. 693, 702, 793 A.2d 226 (2002). Referencing stricken testimony is misconduct, which satisfies the first prong. See *State* v. *Ubaldi*, 190 Conn. 559, 566–57 & n.5, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). The vouching and "liar" remarks are more problematic in light of the context in which they were uttered. The Rules of Professional Conduct are clear and unequivocal. "A lawyer shall not . . . (5) . . . state a personal opinion as to . . . the credibility of a witness . . . ." Rules of Professional Conduct 3.4. Although our Supreme Court has on occasion countenanced violation of this rule; see *State* v. *Thompson*, 266

Conn. 440, 466, 832 A.2d 626 (2003); when the evidence could lead a jury to infer the factual conclusion about which the prosecutor expresses his personal opinion, we conclude that the challenged remarks fall close enough to the line to also warrant our further review.

Having first determined that misconduct has occurred, we now review whether the defendant was deprived of his rights to due process and a fair trial, and apply the six factors set forth in *State* v. *Williams*, supra, 204 Conn. 540. *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004).

We now turn to the second stage of inquiry, which requires us to determine whether, as a result of the misconduct, in the context of the entire trial, the defendant was deprived of a fair trial, requiring us to undertake the six step *Williams* analysis. See *State* v. *Williams*, supra, 204 Conn. 540. Under *Williams*, the first step centers on whether the conduct somehow was invited by the defense. Id. We find nothing in the record before us that warrants such a conclusion.

The second factor to be considered is the severity of the misconduct. Id. There, our Supreme Court has set a high bar. See *State* v. *Thompson*, supra, 266 Conn. 479–80. In *Thompson*, a murder prosecution, our Supreme Court reviewed and found improper the prosecutor's repeatedly calling the defendant a "killer"; id., 472; calling the testimony of the defendant's two principal witnesses "reprehensible," saying that they were "lying" and lacked both "moral fortitude" and "conscience," lived in a "twisted world," were not "stand-up enough guy[s]" and let misguided loyalty to a friend influence their testimony, and that by doing so, they had "reserved a place in hell for themselves"; id., 461; and they were truthful in their earlier, recanted pretrial statements and that to believe their trial testimony,

jurors had to believe that the state's witnesses had lied, and suggesting to the jury that the witnesses would be arrested in connection with the homicide. Id., 467–69. Our Supreme Court in *Thompson* also concluded that the prosecutor improperly importuned the jury to give the victim's family justice by convicting the defendant; id., 473–74; and, finally, that he improperly urged the jury to use impeachment evidence against a third defense witness substantively. Id., 475–77. Nonetheless, our Supreme Court held that this misconduct "was not, for the most part, severe." Id., 479. In this case, the prosecutor did not engage in the repeated *Thompson* like patterns of Juvenalian invective and, although once he did call the defendant a liar, his language was not otherwise strongly condemnatory. By the *Thompson* standard, which constrains our review, we conclude that the prosecutor's conduct was far less egregious than that in *Thompson* and that the defendant has not satisfied the severity prong.

We next turn to the frequency prong. See *State* v. *Williams*, supra, 204 Conn. 540. Although the defendant cites several instances of possible misconduct, they were not frequent.

We are also required to examine the centrality of the misconduct to the issues in the case. Id. The issues to be determined by the jury depended on the weighing of the credibility of several of the state's witnesses who testified in a manner consistent with the defendant's having engaged in improper sexual conduct with and in the presence of minor boys, as opposed to the defendant's version of events, which involved a denial of involvement in the misconduct. The defendant claims that during closing argument, the prosecutor improperly mentioned the portion of L's testimony that was stricken. The jury was instructed to disregard L's testimony that, while he was at the defendant's house, he went to bed clothed and woke up naked. During closing

argument, the prosecutor twice referenced L's stricken testimony, stating: "[L] was over there with [S]. They went to sleep fully clothed, and they woke up completely naked. The defendant walked out of the shower with a towel around himself. [L] knew something was wrong." Later, the prosecutor stated: "Remember how it happened. [L], [S] were over the defendant's house. They fell asleep playing video games, fell asleep fully clothed and woke up both naked. [L] being the oldest of all of them, knew something was wrong. He wanted to go home. He didn't want to stay anymore. He was naked. Didn't know how he got that way. He saw the defendant come out of the shower with a towel around him."

We agree with the defendant that this evidence had been stricken after the state dropped the threatening charges as to S. It was improper, therefore, for the prosecutor to mention it to buttress the charges that remained before the jury as to other victims. See *State v. Ubaldi*, supra, 190 Conn. 566–67. Not only was this evidence not before the jury, but it had been ordered stricken by the court. However, the defendant neither objected to this portion of the state's argument, nor did he seek a curative instruction or mistrial, which we see as some indication that he was satisfied that the jury would follow the judge's instruction to ignore the evidence that had been stricken from the case.

In *Ubaldi*, the trial court, outside the jury's presence, properly had excluded all testimony from a witness who would have invoked the fifth amendment privilege against self-incrimination. Id., 564. The *Ubaldi* prosecutor asked in summation where the nonappearing excluded witness was, inviting an inference adverse to the defendant about a witness who had not testified. Id., 567. In the present case, because the witness had testified before the jury and a portion of that testimony later was stricken, it is possible that the prosecutor's

reference resulted from confusion or mistake about what had been stricken, rather than a desire to flout a court order. We see a factual distinction between this prosecutor's misconduct and that of the *Ubaldi* prosecutor.

We next assess the strength of the curative measures adopted by the court. See *State* v. *Williams*, supra, 204 Conn. 540. The defendant did not object or ask for a curative instruction, and the court did not give one. We do note, however, that in its general charge, which followed the summation, the court instructed the jury that it should not consider evidence that was stricken or lawyers' arguments that differed from the admitted evidence: "Certain things are not evidence, and you may not consider them in deciding what the facts are. These are: (1) arguments and statements by lawyers. The lawyers aren't witnesses. What they have said during trial or in closing argument is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls. Additionally, comments made by counsel during the questioning of witnesses are not evidence; (2) testimony that has been excluded or stricken, and there was some. If testimony was stricken, you must disregard it. You must treat it as if it did not exist." The jury is presumed to have followed the court's instructions absent some showing that it failed or declined to follow the instructions. See *State* v. *Stevenson*, supra, 269 Conn. 598.

During closing argument, the prosecutor commented on the credibility of the state's witnesses when he stated: "Ask yourself this: When you listen to [D, N and S] testify, did you believe them? That's the issue. There has been no motive, no interest that has been shown, no evidence of any motive or interest for them to testify to anything but the truth." The prosecutor further stated: "What motive? No motive for these kids to do

this. They didn't tell anybody. They were discussing it, and it was overheard. Once it was out, then they did tell people they were asked to." The prosecutor's comment, that the witnesses had no motive to lie, occurred in the context of a discussion on the lack of evidence supporting the witnesses' motive to lie. Under *Thompson*, such statements concerning motive, when followed by evidentiary support, are not improper. *State* v. *Thompson*, supra, 266 Conn. 466. However, the prosecutor also made statements that the defendant was lying. During closing argument, the prosecutor stated: "You've got to resolve whether you need to believe the defendant. That's what it comes down to. His interests in this case, the outcome of this case, *that he lied* when he got up on the [witness] stand. Or do you want to believe the three kids who got up there and told you what happened to them and the circumstances under which it happened?" (Emphasis added.)

While it was proper for the prosecution to remind the jury of its obligation to determine from the evidence and the reasonable inferences drawn from it who was telling the truth, it was not proper to offer personal opinion that the defendant "lied when he got up on the [witness] stand." "[E]ven though it is unprofessional, a prosecutor can argue that a defendant is a 'liar' if such an argument is supported by the evidence." *State* v. *Spyke*, 68 Conn. App. 97, 113, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002); see also *State* v. *Wickes*, 72 Conn. App. 380, 388, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002). That type of evidence was not apparent here. In its charge, the court reminded the jury: "You are the sole judges of the facts." In discussing the credibility of witnesses, the court also charged the jury that in deciding what the facts are, "you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe."

Finally, *State* v. *Williams*, supra, 204 Conn. 540, requires us to examine the strength of the state's case. In *State* v. *Ceballos*, supra, 266 Conn. 416, the Supreme Court granted a new trial in a child sexual abuse case that rested solely on the credibility of one victim. In *Ceballos*, there was no physical evidence and, thus, in a situation in which the state's case was weak, the prosecutor vouched for the credibility of one victim. Id. Unlike *Ceballos*, the state's case here is strong. The testimony of the victims, D, S and N, is corroborative of the defendant's sexual misconduct, and L's testimony placed the victims at the defendant's house. Testimony from Donna Vitulano, a social worker at a school based health clinic, the mother of two of the victims, and Vincent Lariccia, a police officer, further established the consistency of the victims' accusations. The case against the defendant was not weak.

After reviewing the record of the entire trial, in light of precedent that binds us, we conclude that the defendant was not deprived of his right to a fair trial.

## IV

The defendant next claims that the court denied him his sixth amendment right to the effective assistance of counsel by failing to undertake an adequate inquiry into his complaints regarding his counsel's representation of him. He further claims that the court abused its discretion in failing to question him adequately after he provided the court with substantial reasons for his desire to dismiss his attorney. We disagree.

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution, guarantee to a criminal defendant the right to [the] effective assistance of counsel." (Internal quotation marks omitted.) *State* v. *Drakeford*, 261 Conn. 420, 426–27, 802 A.2d 844 (2002). "Almost without exception,

we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court*, rather than by those of his counsel." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 385, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

"[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of the inquiry, however, lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Citations omitted; internal quotation marks omitted.) *State* v. *Ruffin*, 48 Conn. App. 504, 514, 710 A.2d 1381, cert. denied, 245 Conn. 910, 718 A.2d 18 (1998).

In this case, the defendant requested that the court dismiss defense counsel on the ground of improper representation. At a hearing four days before trial, the defendant stated to the court: "I think I'm not being properly represented. Okay. I haven't been to court in over two and a half months. I haven't heard from the gentleman. I was shipped from one facility to another one. I didn't know I had a court date. I come to court. I didn't know I'm on trial." The court inquired into the defendant's complaints by asking: "What do you claim [your attorney] has not done for you that he should do for you?" To which the defendant responded: "Well, I should have had contact with him within my two and

a half months I was here. I didn't even know I had court yesterday. I didn't know I was on trial." The court subsequently inquired whether the defendant talked to his attorney before, to which the defendant responded, "No."

The court explained to the defendant how the cases were assigned: "[A]s we dispose of one case, they're assigned. And the state's attorney and public defender are notified to be here the next day. That's how it's done. We don't have engraved invitations that such and such is going to happen." The court stated that the public defender representing the defendant was "a good lawyer" who "prepares his cases well," and gave the defendant a chance to go into a private room and speak with his attorney. The court gave the defendant three opportunities to state his complaints on the record.

"A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Internal quotation marks omitted.) *State* v. *Ruffin*, supra, 48 Conn. App. 514. After reviewing the record, we conclude that the court conducted an adequate inquiry and did not deny the defendant his sixth amendment right to the effective assistance of counsel.

## V

The defendant next claims that the court, by precluding his attempt to present a motive for the victims to lie, denied him his sixth amendment right to present a defense and, therefore, he is entitled to a new trial. We disagree.

"The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . includes the right to offer the testimony of

witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 541–42, 821 A.2d 247 (2003).

However, "[t]he constitution does not require that the defendant be permitted to present every piece of evidence he wishes, although exclusionary rules of evidence cannot be applied 'mechanistically' to deprive the defendant of his rights. . . . If the proffered evidence is not relevant, however, the defendant's right to confrontation is not affected and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, 208 Conn. 365, 376, 545 A.2d 1048 (1988).

In the present case, the defendant testified that he did not commit the charged crimes. In a sidebar conversation, defense counsel told the court that the defendant was going to testify as to his defense that an aunt of one of the victims had given the boys a motive to fabricate the events. The availability of the aunt as a witness was questionable, and the court stated: "I don't want to curtail a defense that you are going to put on. But is this based on hearsay or—that's what bothers me." After the defense counsel reiterated that it was his defense, the court stated: "Fine. I'm just not going to let you have [the defendant] narrate. You are going to have to ask him each specific question, and I'll rule on it as we go along."

As defense counsel's direct examination of the defendant progressed, the court made evidentiary rulings that the *method* through which the testimony was elicited did not comply with the rules of evidence and, as a result, some of it was inadmissible. When defense coun-

sel attempted to elicit testimony from the defendant through leading questions, thereby suggesting the answer and trying to elicit from the defendant his *ideas* as to why the children would testify as they did, the court sustained the prosecution's objections. "It is axiomatic that trial courts have broad discretion to allow leading questions on direct examination depending upon the circumstances of the individual case. *Wright* v. *Blakeslee*, 102 Conn. 162, 168, 128 A. 113 (1925)." *Fonsworth* v. *Sudol*, 19 Conn. App. 368, 370, 562 A.2d 578, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989). It would follow equally, then, that the court has broad discretion in *not* allowing leading questions on direct examination.

We conclude, therefore, that the defendant was not deprived of his sixth amendment right to present a defense when the court made evidentiary rulings that rendered the evidence inadmissible.

The judgment is affirmed.

In this opinion the other judges concurred.