******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM
HENRY WASHINGTON II
(AC 36037)

Alvord, Keller and Prescott, Js.

*Argued December 9, 2014—officially released March 3, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Dewey, J.)

*Stephanie L. Evans*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's
attorney, with whom, on the brief, were *Gail P. Hardy*,
state's attorney, and *Richard J. Rubino*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, William Henry Washington II, appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A).[1] The defendant claims that, in denying his motion for a new trial, the court improperly rejected his claims that (1) the jury's verdict was contrary to the weight of the evidence, (2) the state deprived him of a fair trial when it withheld exculpatory information that supported his theory of defense, and (3) prosecutorial impropriety during closing argument deprived him of a fair trial. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On July 29, 2010, shortly after 12 a.m., the sixteen year old female victim[2] was walking down Park Street in Hartford after leaving her boyfriend's residence. The defendant quickly approached the victim from behind. The defendant put one arm around the victim's neck and, with his other arm, held a sharp instrument to the victim's neck. The defendant warned the victim not to scream, told her that he would not kill her, and, while holding her tightly, led her to an abandoned building that was located nearby on Squire Street.

Once inside the building, at the defendant's instruction, the victim removed her clothing. The defendant began touching the victim's breasts and, while holding the victim, inserted a finger into her vagina. At one point during the encounter, the defendant attempted to sit on the victim, while she was lying on the floor, and insert his penis into her vagina. The victim told the defendant that she just wanted to go home and that she would do anything he wanted. At that point, the defendant forced the victim to get on her knees and perform oral sex on him. The defendant ejaculated in the victim's mouth, and the victim spit the ejaculate on the floor.

After the defendant completed his sex act, he stated that he had to kill the victim because she had seen his face, but that he did not want to kill her because she was "nice." While the defendant was dressing himself, the victim, who was naked, ran from the building, shouting for help. Katia Perez, a bystander who was driving along Park Street, assisted the victim by driving her to a nearby location where Officer John Cavanna of the Hartford Police Department was on patrol in a marked police cruiser. Cavanna provided further assistance to the victim and transported her to a hospital, where a sexual assault examination was performed.

After the jury found the defendant guilty of the crimes with which he stood accused, the defendant filed a

motion for a new trial. Among the grounds asserted in the motion, the defendant claimed that (1) the verdict was clearly against the weight of the evidence, (2) the state failed to disclose material exculpatory information to the defense that would have supported his defense of third-party culpability, and (3) the prosecutor mischaracterized the evidence during closing argument by stating that there was no evidence that the victim was a prostitute despite the defendant's contrary testimony that, earlier in the evening of her abduction, he allegedly had paid her to perform fellatio. The court heard argument on the defendant's motion on June 21, 2013, and denied it. This appeal followed. Additional facts will be set forth as necessary.

Before turning to the claims advanced in the present appeal, we set forth the standard that governs our review of the court's ruling. "Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds." (Internal quotation marks omitted.) *State* v. *Smith*, 313 Conn. 325, 347–48, 96 A.3d 1238 (2014); see also *State* v. *Sherman*, 38 Conn. App. 371, 418, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

I

First, the defendant claims that the court improperly denied his motion for a new trial because the verdict was contrary to the weight of the evidence. We disagree.

Among the other evidence presented at trial, the state presented evidence that, during the police investigation of the incident, they discovered the victim's clothing in an abandoned building on Squire Street. Additionally, a forensic analysis of semen-rich biological material that was swabbed from the victim's mouth during her sexual assault evaluation reflected that such material was consistent with the defendant's DNA profile as found in the state and national DNA databases for criminal offenders. Moreover, video surveillance footage from the location where the incident took place at the time that the incident took place depicts the victim being led away forcibly by the perpetrator and, later, running naked along Park Street. On the basis of their investigation, including information and a description of the male perpetrator provided to the police by the victim, the defendant was arrested and charged with the crimes of which he was convicted.

In his motion for a new trial, the defendant asserted that "[t]he court, having heard the evidence in this matter in its entirety, could conclude that the jury's verdict was clearly against the weight of the evidence and that

the interests of justice require that the defendant be granted a new trial . . . ." At the hearing on the motion, the defendant's attorney conceded that the evidence presented by the state supported a finding of guilt. Specifically, the defendant's attorney referred to the victim's trial testimony that the perpetrator forced her to perform oral sex, as well as the DNA evidence presented by the state that demonstrated that the defendant's semen was present in her mouth following the alleged incident. The defendant's attorney argued, however, that the defendant was entitled to a new trial because a finding of guilt by the jury demonstrated that it had disregarded other evidence and had concluded that other witnesses were not credible. He argued that the defendant's version of events was "correct and credible."

The defendant's attorney continued his argument by observing that, although the victim testified that she had spat the perpetrator's ejaculate on the floor of the abandoned building in which the assault had occurred, the evidence demonstrated that, despite their investigative efforts, the police did not find any evidence of ejaculate on the floor. Also, the defendant's attorney argued that video surveillance evidence that depicted the victim and the perpetrator both prior to and immediately following the sexual assault did not support a finding that the defendant was the perpetrator seen in the video. Moreover, the defendant's attorney argued that, although the victim testified that the perpetrator smelled like PCP,[3] the defendant presented credible testimony concerning his sound habits from his wife, Margaret Washington, and his employer, Willie D. Jumper, Jr., and that their testimony did not support a finding that the defendant was a PCP user.

After hearing the arguments advanced by the defendant and the state, the court summarily denied the defendant's motion for a new trial. The court explained that it would not accept the defendant's invitation to reassess the credibility of the witnesses and, thereby, to second-guess the jury's assessment of them.

Before this court, the defendant reiterates arguments that he raised at trial. The defendant does not dispute that the victim was kidnapped and taken into an abandoned building, but denies being the perpetrator of this crime. He argues that "[t]he only piece of evidence connecting [him] to the victim was the DNA test result that he was a contributor to the DNA in the victim's mouth." At trial, the defendant denied that he was the perpetrator, but testified that, sometime between 8:15 p.m. and 9 p.m. on July 28, 2010, he picked up the victim in his automobile and paid her fourteen dollars to perform oral sex on him. Relying on this trial testimony, the defendant argues that the DNA evidence was not compelling evidence of his guilt.

In support of his claim, the defendant argues that

there was no evidence that his considerable criminal history included crimes of a sexual nature. Next, the defendant argues that the victim was not a credible witness and that the police did not discover evidence of the defendant's ejaculate in the abandoned building. Also, the defendant argues that the verdict cannot stand in light of the opinion testimony of Frank DiMatteo, the manager of legal technology and development employed by the Office of the Chief Public Defender. DiMatteo opined that, on the basis of his evaluation of the surveillance video of the victim and the perpetrator of the crime, the defendant is much taller than the perpetrator. Finally, the defendant argues that, contrary to the fact that the victim testified that the perpetrator smelled like PCP, the testimony concerning his behavior generally, which he claims was credible, reflected that he was not a PCP user. On these grounds, as well as his assertion that the state's case was weak, the defendant argues that the verdict was contrary to the manifest weight of the evidence.

"Although the jury is ordinarily the sole arbiter of the facts in a criminal case, its power is not absolute. . . . The court serves a supervisory function vis-a-vis the jury. . . . In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his [or her] experience, his [or her] knowledge of human nature, his [or her] knowledge of human events, past and present, his [or her] knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his [or her] verdict accordingly. A juror who did not do this would be remiss in his [or her] duty. The trial judge in considering the verdict must do the same, or fail in the discharge of that function which the law has laid upon him [or her]; and if, in the exercise of all his [or her] knowledge from this source, he [or she] finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his [or her] duty to set aside the verdict. . . . In such a case, [a] verdict may be set aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. . . .

"One cogent reason for overturning the verdict of a jury is that the verdict is based on conclusions that are physically impossible. [A] verdict should be set aside [w]here testimony is thus in conflict with indisputable physical facts, the facts demonstrate that the testimony is either intentionally or unintentionally untrue, and leave no real question of conflict of evidence for the jury concerning which reasonable minds could reasonably differ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hammond*, 221 Conn. 264, 267–68,

604 A.2d 793 (1992).

The defendant's arguments do not support a claim that the verdict was based on conclusions that are physically impossible, that the verdict conflicts with indisputable physical facts, or that the verdict conflicts with evidence concerning which reasonable minds could not reasonably differ. It is fundamental that issues relating to credibility and the assessment of conflicting evidence are within the province of the jury. "Our law is well settled that it is a jury's duty to determine the credibility of witnesses and to do so by observing firsthand their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Gilberto L.*, 292 Conn. 226, 247, 972 A.2d 205 (2009). "It is axiomatic that it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses. . . . It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness . . . and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Osbourne*, 138 Conn. App. 518, 533–34, 53 A.3d 284, cert. denied, 307 Conn. 937, 56 A.3d 716 (2012).

There is no support for the argument that the defendant's lack of a history of committing crimes of a sexual nature somehow precluded the jury from finding him guilty in the present case. Additionally, the fact that there was evidence that the victim had been untruthful in the past, with regard to matters unrelated to the present case, did not preclude the jury from concluding that her testimony in the present case was truthful. Moreover, arguments related to the victim's lack of credibility in the present case are particularly unpersuasive in light of the fact that the issue of whether the victim had been assaulted was not in dispute, and her version of events leading up to and following the assault was corroborated by video surveillance footage that depicted her abduction and flight from the scene of the crime. Although the defendant attempts to cast doubt on the victim's version of events by highlighting the fact that the police did not find evidence of his ejaculate on the floor in the abandoned building, the jury reasonably could have concluded that such lack of evidence did not cast doubt on the victim's testimony because there was evidence that the conditions inside of the building made it difficult to search for evidence of this nature and that the materials collected from the building were of such a nature that they were not amenable to biological testing.

Likewise, the defendant's arguments related to PCP are not persuasive. As a preliminary matter, we observe that the defendant's use of PCP, or lack thereof, was irrelevant to his guilt. The victim testified that the perpetrator *smelled* like PCP, which was an observation that the jury readily could have discredited or found to have

been mistaken in light of the victim's testimony that she merely had passed by people that she believed were smoking PCP. Also, the victim did not testify that the perpetrator was a PCP *user*. Assuming that the jury found that the perpetrator did, in fact, smell like PCP, such a subordinate finding does not as a matter of sound logic require that the jury reach a finding that the perpetrator was a PCP user, or that he was under the effects of PCP at the time of the alleged offense. There is no basis in law or logic to conclude that a finding of the defendant's guilt was linked to his alleged use of PCP. Thus, evidence presented by the defendant that, he argues, tended to demonstrate that he was not a PCP user[4] does not cast doubt on the propriety of the verdict in the present case.

Finally, we turn to the issue of the video surveillance evidence and the defendant's interpretation of it. The defendant states that he presented uncontradicted technical evidence from DiMatteo that demonstrated that the perpetrator of the crime was much shorter than the defendant. We readily reject the defendant's attempt to characterize this evidence as proof of an indisputable physical fact that is inconsistent with the jury's guilty verdict. It suffices to observe that, on the basis of his examination of the video footage and his knowledge of the defendant's height, DiMatteo opined that the defendant was not the perpetrator. Although DiMatteo testified concerning the method by which he calculated the height of the perpetrator depicted in the video footage by evaluating pixels in stills taken from that footage together with other information, he readily acknowledged during cross-examination the inherent weaknesses in his methodology. Specifically, he testified that his method of calculating the perpetrator's height was based on an assumption that the video still under examination completely depicted the height of the perpetrator from head to toe. Yet, DiMatteo testified as to the difficulty of determining how the continuous physical movement of the person depicted in the stills at issue influences this assumption, which logically affects the accuracy of his calculation of that person's height. Thus, the video evidence and DiMatteo's opinion were not, as the defendant argues, uncontroverted evidence that undermines confidence in the jury's verdict.

The jury was free to evaluate DiMatteo's opinion testimony, and reject it in whole or in part, for "[t]he acceptance or rejection of the opinions of expert witnesses is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court. . . . In its consideration of the testimony of an expert witness, the [finder of fact] might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . .

It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . ." (Internal quotation marks omitted.) *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 212, 834 A.2d 730 (2003); see also *State* v. *Hoover*, 54 Conn. App. 773, 777, 738 A.2d 685 (1999) ("It is the function of the jury to consider the evidence and to judge the credibility of witnesses. . . . The jury is free to accept or reject all or part of a witness' testimony." [Citation omitted.]). We are not persuaded that the jury unreasonably evaluated DiMatteo's testimony, the video at issue, its observations of the defendant, and the victim's description of the perpetrator in arriving at a finding that the defendant was the perpetrator of the crimes at issue.

In light of the foregoing, we conclude that the court's denial of the defendant's motion for a new trial, on the ground that the verdict was contrary to the weight of the evidence, did not reflect an abuse of its discretion.

## II

Next, the defendant claims that the court improperly denied his motion for a new trial because the state deprived him of a fair trial when it withheld exculpatory information that supported his theory of defense. We disagree.

The following additional facts and procedural history are relevant to this claim. Prior to trial, the defendant filed a "Request for Discovery" in which he sought from the state "[e]xculpatory information or materials . . . ." One of the grounds set forth by the defendant in his motion for a new trial, as discussed in part I of this opinion, provides: "On information and belief, the state is aware of information, based on similar cases under investigation, which would comprise or potentially lead to evidence of third-party culpability which was not disclosed."

During the hearing on the defendant's motion, the defendant's attorney represented the following facts to the court: "Judge, during . . . the trial at a break, I was having a conversation with the state's inspector. I don't know who initiated it. And we were discussing, I think what we . . . all know, at least anecdotally, that there's been a series of attacks against women in the Park Street area, all with broadly the same [modus operandi] and with some indication that the perpetrator may have had some mental health issues.

"But this was significant enough that, in fact, there's been another arrest of an individual, an individual that my office had previously represented, and we felt that it was too close actually to continue representation of him and he was assigned out. That was not presented to the court or to the jury, in terms of third-party culpability, because . . . although he fits the height and the weight and the mental health and the drug usage parameters, he's a light-skinned Hispanic, so he did not really

match up with the individual seen on [the surveillance] video [during the trial].

"Anyway, that . . . point was discussed, [the defendant] was discussed, and the inspector—and I don't know the basis of his information or how significant it is, but he did observe that he felt that [the Hartford Police Department] had some other suspect in the majority of these cases, not [the defendant] and not . . . the other individual that I mentioned, Your Honor. Again, I don't know if they do or not, I just know what the inspector told me."

Before concluding his discussion of this matter, the defendant's attorney stated: "I'm not sure that one of them gives me grounds to request some relief from the court unless we're to go somehow into further hearings to find out exactly what the inspector knows and exactly what [the Hartford Police Department] knows. And I would . . . certainly leave that to the court." The prosecutor replied to the defendant's attorney's statements by stating: "I was not aware of another suspect as it applies to this case." The court denied the defendant's motion without addressing specifically this ground.

For the first time on appeal, the defendant states that the state's failure timely to disclose exculpatory information that supported his defense of third-party culpability was a violation of *Brady* v. *Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The defendant argues that his claim was adequately preserved for appellate review by means of his request for production and his motion for a new trial. Alternatively, the defendant affirmatively seeks review of his claim under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and also claims that plain error exists. See Practice Book § 60-5. The state argues that the claim is unreviewable because the defendant has failed to provide this court with an adequate record that encompasses the court's factual findings and legal conclusions.

"In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. . . . [T]he *Brady* rule applies not just to exculpatory evidence, but also to impeachment evidence . . . which, broadly defined, is evidence having the potential to alter the jury's assessment of the credibility of a significant prosecution witness. . . . In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the suppressed evidence was favorable to the defense; and (3) that the evidence was material. . . .

"[E]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*. . . . Even if evidence is not deemed suppressed under *Brady* because it is disclosed during trial, however, the defendant nevertheless may be prejudiced if he is unable to use the evidence because of the late disclosure. . . . Under these circumstances, the defendant bears the burden of proving that he was prejudiced by the state's failure to make the information available to him at an earlier time. . . . Whether the [defendant] was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 152 Conn. App. 248, 255–56, 96 A.3d 1285, cert. denied, 314 Conn. 934, 102 A.3d 85 (2014).

"In *State* v. *Thompson*, [81 Conn. App. 264, 278, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004)], this court reiterated that [e]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*. . . . Where there has been an initial disclosure of exculpatory evidence at trial, the appropriate standard to be applied is whether the disclosure came so late as to prevent the defendant from receiving a fair trial. . . . The defendant bears the burden of proving that he was prejudiced by the failure of the state to make the disclosure earlier." (Internal quotation marks omitted.) *State* v. *Ivan G. S.*, 154 Conn. App. 246, 252, 105 A.3d 905 (2014), cert. denied, 315 Conn.    ,     A.3d     (2015).

In his motion for a new trial, the defendant raised a *Brady* type claim by alleging that the state had failed to disclose material information to the defense. The argument advanced by the defendant with regard to this claim, which was based on a late disclosure by the state's investigator during the course of the trial, hardly was compelling. As set forth previously in this opinion, although the matter concerned an event of which he admitted to having first-hand knowledge, the defendant's attorney did not explain precisely *when* during the trial the disclosure at issue occurred. There was no evidence presented to demonstrate that the disclosure was, in fact, late. The defendant's attorney stated that he was "not sure" if he had grounds for requesting any relief in connection with this issue and did not request any relief, such as a further hearing, but stated that he would "leave [it] to the court" to decide whether further proceedings were appropriate to investigate what was known by the inspector or the police department. The present claim is based on an alleged *Brady* violation, not that the court erred by failing to order that any further proceedings be held in connection with this claim.

*Brady* requires a showing that (1) evidence was suppressed, (2) the suppressed evidence was favorable to the defense, and (3) the suppressed evidence was material. *State* v. *Rivera*, supra, 152 Conn. App. 256. Because the defendant's claim was based on a disclosure that occurred during trial, the defendant bore the burden of demonstrating the manner in which he was prejudiced by the state's failure to disclose the information at an earlier time. *State* v. *Ivan G. S.*, supra, 154 Conn. App. 252. Here, the defendant's attorney referred to the information shared by the state's investigator, in part, as information "we all know." He then expressed uncertainty as to the accuracy of what the investigator told him. The statements of the defendant's attorney merely invited conjecture that some type of impropriety occurred; he did not demonstrate that the timing of the disclosure was improper, the manner in which the information would have been favorable and material to the defense, or how the timing of the disclosure prejudiced the defense. The defendant's attorney did not refer to the existence or extent of any investigative efforts of his own concerning this issue, but merely left it to the court's discretion to conduct a further investigation. What is clear is that, although the defendant's attorney stated that he learned of this information during the trial, he failed to request any relief at that time, but chose to raise the present issue in his posttrial motion for a new trial.

In denying the motion for a new trial, the court did not set forth any factual findings or legal conclusions specifically related to the defendant's claim of an untimely disclosure. It is the defendant's burden to present this court with an adequate record to review the claim that the court improperly denied his motion for a new trial on this ground. See Practice Book § 61-10 (a) (responsibility of appellant to present adequate record for review). The defendant did not take any steps to obtain an articulation of the court's decision in this regard. See Practice Book § 66-5 (filing motion for articulation). In light of the fact that the defendant did not present any evidence to demonstrate that an untimely disclosure of material information prejudiced the defense and presuming, as we must, that the court acted correctly in ruling on this claim,[5] we readily conclude that the defendant cannot meet his burden of demonstrating that the court abused its discretion when it denied the motion for a new trial on the basis of his *Brady* claim.

### III

Finally, the defendant claims that the court improperly denied his motion for a new trial because prosecutorial impropriety during closing argument deprived him of a fair trial. We disagree.

The following additional facts are relevant to this

claim. At trial, the victim testified that she was at her boyfriend's house until approximately 12 a.m. on July 28, 2010, and that the sexual assault occurred thereafter, while she was walking to her mother's house. At trial, the defendant testified that on July 28, 2010, he paid the victim to provide him with oral sex. He testified that, at approximately 8:30 p.m., he was driving home alone after visiting friends when he stopped at a traffic signal at the intersection of Washington Street and Park Street in Hartford. At that location, he observed a female crossing the street. After they made eye contact, he used the headlamps of his automobile to signal to her. The defendant positioned his automobile near the side of the street, at which time, and with his consent, the female got into his automobile. The female directed him to drive to a nearby location on a side street, at which time the defendant and the victim agreed that the defendant would pay the female ten dollars in exchange for oral sex. The defendant stated that he transferred fourteen dollars to the female and that she performed oral sex on him in his parked automobile. According to the defendant, he completed his sex act, cleaned himself accordingly, and the victim walked back in the direction of Washington Street. The defendant stated that this was the last interaction that he had with the female, and that he proceeded to drive home. During his testimony, the defendant provided the jury with a physical description of the female at issue and stated that the victim was the female at issue.

During cross-examination, the prosecutor asked the defendant several questions about his testimony that he had engaged in a sex act with a prostitute on July 28, 2010. The prosecutor asked the defendant when he "came up" with "the story about the prostitute." The defendant replied that "it happened," and that he had been with more than one prostitute in 2010.

During the defendant's closing argument, his attorney referred to the evidence of prostitution. The defendant's attorney stated: "[The defendant] testified; you heard his explanation about why you would find his seminal fluid in [the victim's] mouth. It's not a pretty picture. I'm certain it's not anything to be proud of exactly, but there it is. Now, you heard [the prosecutor] cross-examine [the defendant]. [The prosecutor] suggested, as is his right, that what [the defendant] was doing was . . . being familiar with the facts, he's just come up with a good story, kind of wraps it all up and says that he is not guilty."

During his rebuttal argument, the prosecutor stated in relevant part: "What reasonable doubt is here? One thing you have to remember is this case is State versus William Washington. This is not the case of State versus [the victim]. There's this defense of—I should say part of a defense is prostitution.

"In this case, you have no evidence whatsoever of

[the victim] being a prostitute. You cannot speculate that she was. You have to base your decision on the evidence presented in this courtroom, in this case."

Later during his rebuttal argument, the prosecutor stated in relevant part: "So this is the time that the state will tell you to use your common sense in this case. Definitely use your common sense. You know, you have to ask . . . the question; you really have no logical explanation for why the defendant's DNA is in [the victim's] mouth. You have no logical explanation. And the defendant's testimony didn't give it to you either. So, when you go back to deliberate, don't leave your common sense at the door. Look at all the evidence."

The defendant did not raise any claim relating to the propriety of this rebuttal argument until he filed his motion for a new trial. One of the grounds set forth in that motion stated: "The state argued in closing that there was no evidence of prostitution, without qualification, on the part of the complainant when in fact that was a significant element of the defendant's testimony." During argument on the motion, the defendant's attorney stated in relevant part: "Now . . . whether it was intended by the state as this or not, the state did argue without reservation that there was no evidence of prostitution when in fact that was exactly what [the defendant] was testifying to. And to the extent that might be construed as saying that [the defendant] was lying, that's certainly something that's unfair to [the defendant] and should be taken into account and potentially alone could be enough to grant a new trial." The court denied the defendant's motion for a new trial without referring to this specific ground.

As he did at trial, the defendant argues that the prosecutor's rebuttal argument constituted prosecutorial impropriety. Referring to his trial testimony that he paid the victim to perform oral sex, he argues that the prosecutor, without qualification, mischaracterized the evidence by stating that there was no evidence that the victim was a prostitute. Furthermore, the defendant argues that, by arguing that there was no logical explanation for the fact that the defendant's DNA was found in the victim's mouth, the prosecutor improperly expressed an opinion as to his guilt and lack of credibility. The defendant argues that the improper argument in this regard deprived him of a fair trial because the issue of the defendant's DNA was the only critical issue in the case and the defense did not invite the improper argument.

The defendant draws our attention to the fact that he raised this claim of prosecutorial impropriety before the trial court in the context of his motion for a new trial. We review the claim in the context of the court's denial of that motion. We observe, however, that "[t]he appropriate time for a defendant to raise a claim of impropriety in the state's final argument is either at the

time the improper argument is made or at the close of the state's argument, not in a postverdict motion." *State* v. *Whipper*, 258 Conn. 229, 244, 780 A.2d 53 (2001), overruled in part on other grounds by *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004), and *State* v. *Grant*, 286 Conn. 499, 535, 944 A.2d 947, cert. denied, 555 U.S. 916, 129 S. Ct. 271, 172 L. Ed. 2d 200 (2008). Regardless of whether we review the claim in the context of the court's denial of the motion for a new trial or as an alleged instance of prosecutorial impropriety that was not properly raised before the trial court,[6] the claim fails because the defendant is unable to demonstrate that any impropriety occurred.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. . . . In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry. . . . An appellate court's determination of whether any improper conduct by the prosecutor violated the defendant's right to a fair trial is predicated on the factors established in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . . [If] a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show . . . that the remarks were improper . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Chase*, 154 Conn. App. 337, 341–42,     A.3d     (2014), cert. denied, 315 Conn.     ,     A.3d     (2015).

"As [our Supreme Court] previously [has] recognized, prosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however] [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . .

that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 611–12, 65 A.3d 503 (2013).

Additionally, "[a] prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions. . . . It is not, however, improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 435, 902 A.2d 636 (2006).

The defendant analyzes this claim by focusing on the prosecutor's declaration that there was "no evidence whatsoever of [the victim] being a prostitute." When these words are considered in artificial isolation, interpreted literally, and afforded their most sinister interpretation, the defendant's claim appears to have merit. This is because the defendant's testimony constituted evidence that the victim was a prostitute and that she engaged in a sex act for money with him hours before the sexual assault.

Claims involving prosecutorial impropriety during the course of closing argument require a court to evaluate a prosecutor's statements not for their possible meaning, but for the manner in which the jury reasonably and likely would have understood them. Because the meaning of words and statements typically is dependent on the context in which they are used, a court must carefully consider a prosecutor's challenged statements by carefully considering their context in the entire trial, including the remainder of the state's closing argument. See, e.g., *State* v. *Francione*, 136 Conn. App. 302, 325, 46 A.3d 219 (reviewing courts do not evaluate prosecutor's statements in artificial isolation), cert. denied, 306 Conn. 903, 52 A.3d 730 (2012).

A review of the prosecutor's argument in its entirety leads us to conclude that the prosecutor's statement, that there was no evidence that the victim was a prostitute, was a fair critique of the defendant's testimony to the contrary. During cross-examination, the prosecutor posed questions that were designed to cast doubt on the defendant's testimony that his DNA was found in the victim's mouth because he had paid her for sex. During the defendant's closing argument, the defendant's attorney drew the jury's attention to the fact that the state viewed the defendant's testimony in this regard to be entirely self-serving. The challenged statement during rebuttal argument followed the prosecutor's arguments that reasonable doubt did not exist and that the victim was not on trial. After referring specifically to the "defense" of prostitution, the prosecutor made the remark at issue, that there was no evidence that the victim was a prostitute. The prosecutor stated that the jury had to base its decision on the evidence presented at trial. Moments later, when discussing the state's DNA evidence, the prosecutor said there was "no logical explanation" for this evidence and that "*the defendant's testimony didn't give it to you either.*" (Emphasis added.)

Thus, at trial, the prosecutor cross-examined the defendant concerning his testimony that he paid the victim for sex. During the state's rebuttal argument, the prosecutor's statement about there being "no evidence" of prostitution was surrounded by statements that necessarily had drawn the jury's attention to the defendant's testimony that the victim was a prostitute. By referring to a "defense" of prostitution, the prosecutor logically had referred to the defendant's trial testimony. Also, by stating that "the defendant's testimony" did not provide a logical explanation to rebut the persuasiveness of the state's DNA evidence, the prosecutor logically and directly had drawn the jury's attention to the defendant's testimony about prostitution.

In this context, there is no basis on which to afford the prosecutor's statement its most damaging interpretation. See *State* v. *Ciullo*, 314 Conn. 28, 48, 100 A.3d

779 (2014) ("a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations" [internal quotation marks omitted]). It would be unreasonable to interpret the state's argument in the manner suggested by the defendant because it would yield an illogical meaning. Specifically, it would result in an argument that simultaneously highlights the defendant's trial testimony that the victim was a prostitute and suggests that such testimony did not exist. It is far more reasonable to conclude that, in the heat of argument, the prosecutor used the inexact phrase "no evidence" as a shorthand way of stating that, when subjected to appropriate scrutiny by the jury, the defendant's version of events simply was not *credible* evidence of the matters asserted therein.[7]

Apart from arguing that the prosecutor mischaracterized the evidence, the defendant argues that the prosecutor's argument was an improper commentary on his credibility and his guilt. This argument is unpersuasive because the defendant has not demonstrated that the prosecutor's commentary was unrelated to the evidence and a rational assessment of the evidence. It is permissible for a prosecutor to ask the jury to infer that a defendant testified untruthfully if there is a reasonable basis in the evidence on which to draw such an inference. See, e.g., *State* v. *Warholic*, 278 Conn. 354, 371–72, 897 A.2d 569 (2006); *State* v. *Dawes*, 122 Conn. App. 303, 312, 999 A.2d 794, cert. denied, 298 Conn. 912, 4 A.3d 834 (2010). The prosecutor, in arguing that there was no evidence that the victim was a prostitute, stated that the jury should evaluate the issue based "on the evidence presented in this courtroom . . . ." The prosecutor invited the jury to evaluate the DNA evidence using its "common sense" and stated that the defendant's testimony did not provide "[a] logical explanation" consistent with his innocence. Viewed in light of the entire trial, including the prosecutor's cross-examination of the defendant, the argument reflected the prosecutor's critical assessment of the defendant's testimony and his guilt, not the prosecutor's personal opinion of the defendant's credibility or guilt. The prosecutor invoked concepts of common sense and logic, not his personal belief or facts that were known to the prosecutor and unknown to the jury. Accordingly, we conclude that the statements fell within the fair bounds of proper commentary on the evidence and the inferences to be drawn therefrom.

For the foregoing reasons, we conclude that the challenged rebuttal argument was not improper. Accordingly, the defendant is unable to demonstrate that the argument deprived him of a fair trial. As it relates to the defendant's claim of prosecutorial impropriety, the court's denial of the motion for a new trial reflected a proper exercise of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The trial court sentenced the defendant to a total effective term of ten years incarceration, execution suspended after five years, followed by a period of probation of five years.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] There was evidence that phencyclidine (PCP) is a street drug that induces psychotic behavior. See footnote 4 of this opinion.

[4] The defendant testified about his habits and routine at the time of the incident at issue. The defense presented testimony from Jumper and Margaret Washington about the defendant's habits and routine generally with respect to his home life and employment. The defendant then presented evidence from Louis Montagna, a social worker employed by the Office of the Public Defender. Montagna testified concerning PCP and the deleterious effect that it has on users. He testified that users demonstrate psychotic behavior and that it would be very difficult for a PCP user to maintain a normal lifestyle. On the basis of this evidence, the defendant argued at trial and argues before this court that a PCP user could not have maintained his type of lifestyle.

We have stated that the defendant's argument is flawed in that it is based on a faulty premise that, because of the victim's testimony that he smelled like PCP, his criminal culpability in this case was predicated on a finding that he was a PCP user. Yet, we also observe that the record does not support his argument that the evidence strongly demonstrated that he did not exhibit the type of psychotic behavior seen in PCP users. First, we note that neither Jumper nor Washington were able to recall the defendant's habits or routine on the date of the incident at issue. Second, Montagna acknowledged in his testimony that a person could be an infrequent PCP user, perhaps by using the drug "every six weeks," and could maintain a normal lifestyle.

[5] "The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 132, 74 A.3d 1225 (2013).

[6] We note that unpreserved claims of prosecutorial impropriety are reviewable on appeal absent resort to an extraordinary level of review. See, e.g., *State* v. *Ciullo*, 314 Conn. 28, 35, 100 A.3d 779 (2014).

[7] Additionally, at the beginning of the state's closing argument, the prosecutor correctly stated to the jury that its recollection of what transpired during the presentation of evidence was controlling and that the jury was obligated to follow the court's instructions. The prosecutor stated in relevant part: "A couple of preliminaries in this case: you're the fact finders; so it's your recollection that controls, not what I say. . . . The judge is going to instruct you on the law, and if there's something different between what I say and what the judge says, it's the judge's instructions that control in this matter."

Later, during its charge, the court unambiguously instructed the jury that its recollection of the evidence was controlling and that it was to find facts on the basis of the evidence presented at trial. The court stated that the jury was not permitted to "go outside the evidence introduced in court to find the facts." The court went on to state in relevant part: "The evidence from which you are to decide what the facts are consists of, one, the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness, and two, the exhibits that have been admitted into evidence, regardless of who called the witness.

"The weight of the evidence presented by each side does not depend on the number of witnesses; it is on the quality of the evidence, not the quantity of the evidence, that you must consider. In reaching your verdict, you should consider all testimony and exhibits admitted into evidence.

"Certain things are not evidence and you may not consider them in deciding what the facts are. These include arguments and statements by lawyers. The lawyers are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls."